Hosmer vs. McDonald and others.

HOSMER, Appellant, vs. McDONALD and others, Respondents.

*May 8 — June 3, 1891.*

(1, 2) *Appeal: Review of findings of fact: Sale of lumber.* (3) *Contra-dictory contract: Practical construction by parties.*

1. The rule that the supreme court will not reverse the findings of the trial court upon disputed questions of fact, except upon apparent satisfactory preponderance of the evidence against the findings, applies to a case where the testimony was taken by a referee and reported to the court.

2. Findings of the trial court in this case, that the parties to a sale of lumber had never agreed upon a mutually satisfactory person to estimate the quantity thereof, but had agreed that the shipping scale should be taken in determining the quantity shipped before the estimate provided for in the contract should be made, and as to the actual quantity sold, are *held* not to be against the weight of the evidence.

3. Where the terms of a written contract are contradictory, evidence of the practical construction given to it by the parties in their subsequent dealings under it, is properly to be considered, and is of much weight in determining the proper construction.

APPEAL from the Circuit Court for *Marathon* County.

This action was brought to recover a balance claimed to be due appellant on the purchase price of a quantity of lumber sold by appellant to the defendants *D.* and *F. McDonald*, who were partners, June 7, 1882, by the following written contract:

"This article of agreement, made and concluded the seventh day of June, A. D. 1882, by and between *Amanda S. Hosmer*, of Washington, D. C., party of the first part, and *D. & F. McDonald*, doing business under that name and style, and residing in Wausau, Wisconsin, parties of the second part, witnesseth:

"*First.* That the said parties of the second part hereby agree and bind themselves and their legal representatives to pay, or cause to be paid, to the party of the first part, her heirs or assigns, on or before the 7th day of February, A. D. 1883, the sum of ten dollars and fifty cents per thousand feet, board measure in the pile, for all merchantable lumber manufactured at the mill of the Marathon Lumber Co., at said Wausau, during the season of 1881 and 1882, under the written contracts of said company with A. A. Hosmer, copies of which are hereto attached

for reference; excepting and deducting from that amount of said lumber the amount thereof delivered from the yard of said company to P. W. Freeze or the Green Bay Railroad Company and C. Starkweather and Mr. Frambach, per the order of A. A. Hosmer. Payments of lumber embraced by this contract to be made as follows, to wit: Two thousand dollars cash or approved paper, and the sum of two thousand six hundred and sixty-six dollars and ninety-two cents, as per item of a bill dated June 8th, 1882, by the Marathon Lumber Company, and delivered to A. A. Hosmer, said bill being copied and attached hereto for reference; and also to pay the Marathon Lumber Company the saw bills as the same become due from A. A. Hosmer to the said lumber company, under said Hosmer's contract therewith for the season of 1882, of which a copy is hereto attached; [and, in addition to the payments already mentioned, the sum of nine dollars per thousand feet, board measure, for all lumber embraced by this contract hereafter sold, used, or disposed of by the parties of the second part, which last-mentioned sum is to be paid within ninety days from the date of such sale, use, or disposal:] provided, that the said sum of nine dollars per thousand shall not exceed the full price of ten dollars and fifty cents per thousand for all the lumber embraced by this contract; and whatever balance of the purchase price of ten dollars and fifty cents per thousand feet is found due on the seventh day of February, 1883, in addition to payments theretofore made, is to be paid in cash or approved paper, running not to exceed sixty days.

"Second. The said party of the first part hereby agrees and binds herself, her heirs, executors, and assigns, to deliver the lumber embraced by this contract, believed to be about two and one-half million feet to three million feet, free from all incumbrances except the saw bills hereinbefore referred to or mentioned, to the said parties of the second part, upon compliance by them with the terms of payments stated herein. It is also mutually agreed by the parties hereto that the amount of lumber embraced by this contract shall be determined by estimating the same in the piles, in the yard of said company, by such person as may be mutually satisfactory; and for such amount thereof as may, before delivery to the parties of the second part, be destroyed by fire or other elements the said party of the first part is not to be held liable to deliver to said parties of the second part."

The defendant *Gillett* afterwards executed the following guaranty at the foot of this contract:

"WAUSAU, WIS., June 24, 1882.

"For value received I guaranty the payment of the nine dollars per thousand feet, according to the terms set forth in the within contract, beginning with the word 'and,' in the line numbered 41, and ending with the word 'disposal,' in the line numbered 48.          J. D. GILLETT."

The clause referred to in the guaranty is inclosed in brackets in the foregoing copy of the contract.

The complaint alleges that one McPhail was mutually agreed on as a satisfactory person to estimate the amount of the lumber under the provisions of the contract, and that he did estimate it, and that the amount of his estimate (less a small amount mutually agreed on as unmerchantable) was 2,647,809 feet, all of which is alleged to have been disposed of or used by the defendants *McDonalds* on or prior to February 7, 1883. After admitting certain payments, the complaint alleges a balance due on the contract of $5,981.91, with interest from February 7, 1883.

The answer of the *McDonalds* admits the partnership, the contract, and the guaranty; alleges that only 2,331,790 feet of lumber was delivered under the contract, for which they claim to have fully paid the contract price; denies that McPhail was agreed upon as a satisfactory person to estimate the lumber; and denies that he did estimate it. The answer also contains a counterclaim for $336, alleged to have been overpaid by defendants on the contract, and upon the trial an amendment to the answer was allowed, setting up another counterclaim of $107.33 for labor in loading lumber on cars, claimed to have been performed by defendants for plaintiff in 1881. Reply, a general denial.

The action was referred to S. H. Alban, Esq., as referee to take testimony only, which testimony was reported to the circuit court; which court, after hearing and argument, filed findings of fact and conclusions of law, in which, among other things, it was substantially found that the lumber sold by the contract was the lumber in the mill-yard and the lumber thereafter manufactured, and did not include any lumber which had been sold or shipped from the yard prior to June 7, 1882; also that no estimate was made under the provisions of the contract by any person agreed on as mutually satisfactory; also that no settle-

ment was made February 7, 1883, but that it was mutually waived; also that the lumber was correctly measured when shipped from time to time; and that the shipping scale or measurement so made was agreed on by the parties as determining the quantity of lumber shipped before the contract estimate should be made; also that the total amount of lumber conveyed, as determined by said measurement, was 2,328,937 feet, and that said measurement governs; also that the total purchase price was $24,453.84; that the payments were $24,324.98, leaving a balance due of $128.86 of principal and $150 as interest, for which *Gillett*, as guarantor, was liable; also that the payments made to McPhail, which were not made on written orders, were authorized by plaintiff and properly chargeable as partial payments on the contract; also that there was due defendants, on the counterclaim for labor set up in the amendment to the answer, $107.98. As a conclusion of law, the court found plaintiff entitled to judgment against the defendants for $20.88, being the excess of the amount due as principal under the contract over and above the counterclaim, and for $150 interest, being a total of $170.88. Judgment was entered accordingly, and plaintiff appealed. Other facts necessary to an understanding of the questions decided will be found in the opinion.

For the appellant there was a brief by *Raymond & Brennan*, and oral argument by *John H. Brennan*.

For the respondents there was a brief by *Silverthorn, Hurley, Ryan & Jones*, and oral argument by *G. D. Jones*.

WINSLOW, J. It seems necessary again to state the rule that this court will not reverse the findings of the trial court upon disputed questions of fact, except upon apparent satisfactory preponderance of the evidence against the findings, and this rule applies to a case where the testimony was taken by a referee and reported to the court, as well

as to a case tried by the court. *Ely v. Daily*, 40 Wis. 52. Vigorous attack is made by the appellant's counsel upon a number of the findings of fact made by the circuit judge. We have patiently, and we believe thoroughly, examined the case, and we cannot say, after that examination, that there is a preponderance of evidence against any of the findings so attacked.

The principal findings which are sought to be reversed are those wherein it was found that no person was agreed upon as mutually satisfactory to both parties to make an estimate of the amount of lumber sold, and that no estimate under the terms of the contract was in fact made; and that it was agreed that the shipping scale or measurements, taken from time to time as the lumber was shipped, should be taken in determining the quantity of lumber shipped by the *McDonalds*, before the estimate provided by the contract should be made.

It appears that on the 1st of July, 1882, the plaintiff's agent, A. A. Hosmer, who transacted all her business, wrote and sent to the *McDonalds* a letter, in which he proposed that one McPhail should attend to the estimating of the lumber in the pile, and requested that if this would be satisfactory to them (the *McDonalds*) they tell McPhail to go to work at it at once. This letter was not replied to. Hosmer also wrote McPhail at the same time, asking him to see *McDonald*, and find out if it would be satisfactory to have him (McPhail) estimate the lumber. McPhail testified that he saw *D. McDonald*, and that *McDonald* expressed himself as satisfied that McPhail should make the estimate. *McDonald* denied this conversation, and claims that the conversation with McPhail was simply to the effect that he (McPhail), acting for *Mrs. Hosmer*, and one McCammond, acting for the *McDonalds*, should count and keep track of the lumber as it was shipped.

It further appears that McPhail and McCammond did

keep track of the lumber as shipped, and McPhail testifies that he, with the assistance of one McIndoe, estimated the piles as fast as made, finishing his estimate in October, 1882. McPhail also testified that he estimated the amount of lumber sawed in 1881, and the total of his estimate for both years is more than 200,000 feet in excess of the gross amount of the shipping scale or measurements made from time to time as the lumber was shipped. It is this difference between the alleged estimate of McPhail and the shipping measurement which forms the largest item of plaintiff's claim here. If the alleged estimate is to control, then plaintiff should have a much larger judgment, and whether the estimate is to control or not depends on whether McPhail was agreed on as a mutually satisfactory person to make the estimate. Appellant's counsel makes a forcible argument to the effect that the *McDonalds* are estopped from denying that they assented to McPhail's making the estimate, because they did not reply to Hosmer's letter, proposing McPhail's name, and Hosmer thereby was led to believe, and did believe, that they had assented to his proposition, and rested easy in that belief.

Doubtless a party may be estopped by silence when he ought to speak as well as by words, and, if these facts stood alone, we might feel compelled to adopt appellant's view; but there are many other facts in the case which bear more or less directly upon this question. The testimony is voluminous, and we cannot undertake here to recount it; but it is sufficient to say that there is considerable testimony relating to the subsequent conduct of the business, and correspondence and intercourse between the parties, which tends strongly to prove that neither party understood that a mutually satisfactory estimator had ever been agreed on. As the lumber was shipped, frequent statements were forwarded by the defendants to Hosmer of the amounts shipped according to the actual measurement; frequent

payments were made on the basis of these measurements. The whole business seems to have run along for months without reference to any estimate, and, as late as December, 1882, and February, 1883, Hosmer writes letters to *McDonald*, urging that estimates be *then* made by *McDonald* in connection with McPhail to determine the amount of lumber sawed in 1882. This certainly seems to negative the idea of an already completed estimate by a mutually satisfactory person. Certain it is, also, that an arrangement was made between *McDonald* and Hosmer that lumber might be shipped before the estimate provided in the contract was made, and that it should be measured as it was shipped, the only dispute being as to what person should do the measuring. Without attempting to go further in detail in the evidence, we think it clear that the findings of the circuit judge on these points, as well as with regard to the actual amount of lumber sold, are not against the weight of the evidence. As to the payments made to McPhail on the alleged verbal directions of Hosmer, the preponderance of the evidence is clearly in accordance with the findings of the circuit judge. As to the counterclaim of $107.98, allowed for loading lumber consigned to Freeze and Frambach, no serious contention seems to be made, and it is certainly supported by the evidence.

A serious question is, however, raised by appellant as to the construction of one part of the written contract. The contract provides substantially for the purchase by defendants of all merchantable lumber manufactured at the mill of the Marathon Lumber Company for Hosmer, during the seasons of 1881 and 1882, except the amount previously delivered to P. W. Freeze, Green Bay Railroad Company, C. Starkweather, and Frambach. It appears that at least 53,000 feet of Hosmer's lumber had been shipped from the yard in 1881 to Gile & Gillett, and appellant now claims that defendants must account for this lumber, because

it was not excepted from the general clause above set forth.

Doubtless, if there were no other provisions of the contract bearing on the question, appellant's position would be impregnable. But there are other clauses in the contract which bear on the question, and it is elementary that the construction must be a construction of the whole contract, and not of disjointed parts taken separately. The contract provides that the plaintiff will actually deliver the lumber embraced in it, and further that the amount of lumber embraced by the contract shall be determined by estimating the same in piles in the yard of the company. There is no pretense that the Gile & Gillett lumber ever was delivered to the defendants, and it is manifest that it could not be actually delivered, nor could it be estimated in piles in the yard. Now, in this manifestly contradictory state of the contract, it might with much force be argued that, in the absence of all testimony, a proper construction of the whole contract should be that it was only the lumber actually delivered and piled in the yard that was sold; but, however this may be (and we do not decide the question), it is plain that evidence of the practical construction given to the contract by the parties in their subsequent dealings under it, is properly to be considered and is of much weight in determining the proper construction. The evidence indicates clearly, to our minds, that the parties, in their subsequent dealings, did not consider that the Gile & Gillett lumber was included in the sale, and such was the conclusion of the circuit court.

This substantially disposes of the questions raised on this appeal.

*By the Court.*— The judgment of the circuit court is affirmed.