MOMSEN, Assignee, Appellant, vs. PLANKINTON, Assignee, Respondent.

*April 10 — April 30, 1897.*

*Appeal: Findings, when disturbed: Voluntary assignment: Fraudulent conveyances.*

1. The rule that findings of the trial court or of a referee will not be disturbed unless clearly against the preponderance of the evidence applies to all trials by the court or a referee, in equitable as well as in legal actions, including cases where the testimony is taken by a referee and reported to the court.

2. In a proceeding to set aside as fraudulent and void, under sec. 1693a, S. & B. Ann. Stats., transfers and conveyances made to a bank by its manager (who shortly thereafter made a voluntary assignment), to secure the latter's indebtedness to the bank, the evidence is *held* sufficient to sustain a finding that the bank did not know, or have reasonable cause to believe, the debtor to be insolvent at the time of the transfers.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This was an application by the assignee for the benefit of the creditors of Frederick T. Day, on petition, for an order setting aside certain transfers and conveyances made by Day, before his assignment, to the Plankinton Bank, as security for debts due from him to the bank.

Day was the vice president and general manager of the bank. He carried on a large outside business of his own. He was reputed to be, and believed himself to be, a man of large wealth, and entirely solvent. He drew aid for his own business from the bank, and became largely indebted to it. The bank pressed for security. On the 3d day of April, 1893, an arrangement was made between Day and the bank for the transfer by Day to the bank of certain designated property as security for his liability to the bank. This agreement was subsequently carried out by Day, and all the

designated property was transferred to the bank at conven-
ience and before the 1st day of June following. A large
part of the transfers were made in May, 1893. The value
of the property transferred was estimated at upwards of
$460,000. His indebtedness to the bank was upwards of
$300,000. On June 1, 1893, the Plankinton Bank made an
assignment for the benefit of its creditors to *William Plank-
inton*, the respondent. On the 3d day of June, 1893, Day
made an assignment for the benefit of his creditors to the
petitioner. The petition asked to have the transfers set
aside on the ground that they are void as to the other cred-
itors of Day, by force of sec. 1693a, S. & B. Ann. Stats.,
which reads, in part, as follows: "Every sale, mortgage,
hypothecation, lien or other security of any name or nature,
made, given or executed of or upon his property, real or
personal, by an insolvent debtor, within sixty days prior to
the making of any such assignment, and in contemplation
thereof, or of insolvency, shall be void and of no effect; pro-
vided, the vendee in such sale, or the person benefited thereby,
or receiving such mortgage, hypothecation, lien or other se-
curity, knew or had reasonable cause to believe such debtor
insolvent."

The trial court found against the petitioner, in substance,
that, at the time of the transfers, Day was unable to meet
his obligations as they matured; but that it is not shown
that his assets were not then, at the then ruling prices and
values, sufficient for the payment of all his debts in full;
that at the time of making such transfers he did not con-
template making an assignment for the benefit of his credit-
ors, or insolvency; that the transfers were not made in con-
templation of such an assignment or of insolvency; that the
Plankinton Bank did not know, or have reasonable cause to
believe, that Day was insolvent; and that the transfers were
made in pursuance to, and in performance of, the agreement
of April 3, 1893, in good faith, and not in contemplation of

any assignment or insolvency. This finding was followed by an order dismissing the petition on the merits, with costs. The appeal is from that order.

For the appellant there were briefs by *Elliott & Hickox,* and oral argument by *E. S. Elliott* and *C. T. Hickox.*

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*

NEWMAN, J. The only question presented by this appeal is whether the findings of the trial court are sufficiently supported by the evidence. If they are so supported, they cannot be overthrown here. The burden was on the petitioner to satisfy the trial court, by evidence, of the truth of his contention. He failed to so satisfy the court. The findings of the trial court cannot be disturbed here unless it is made to appear to this court that the evidence produced in the trial court was so strong and cogent as that the trial court ought, reasonably, to have been convinced by it. For it is well established by a long and uniform line of decisions that this court will not reverse the findings of the trial court, or of a referee, unless they are clearly against the preponderance of the evidence. This rule applies to all trials by the court or a referee, in equitable as well as in legal actions. *Ely v. Daily,* 40 Wis. 52; *Norris v. Persons,* 49 Wis. 101; *Stanley v. Risse,* 49 Wis. 219; *Gœtz v. Salomon,* 55 Wis. 310; *Althouse v. Baldwin,* 56 Wis. 398; *Anderson v. Wehe,* 62 Wis. 401; *Bruce v. Miller,* 72 Wis. 404; *Zimmerman v. Chambers,* 79 Wis. 20; *Hosmer v. McDonald,* 80 Wis. 54; *La Coursier v. Russell,* 82 Wis. 265. The rule applies as well where the testimony, as in this case, is taken by a referee and reported to the court. *Ely v. Daily, supra; Hosmer v. McDonald, supra.* If the force of this rule were better realized by the profession, it would prevent many fruitless appeals.

There is indeed very little, if any, evidence to show that,

at the time when he made the transfers, Day was contemplating the making of an assignment for the benefit of his creditors, or that he believed that he was in an insolvent or failing condition. There is much which tends to show the contrary. He believed that he was a man of wealth and ample means. He expected to continue his business, and believed that he had ample property to pay all his debts and leave a handsome surplus. But the failure of the bank precipitated his affairs. The advance of panic, with the shrinkage of all values, brought all his *chateaux en Espagne* in sudden destruction about his unfortunate head. It can hardly be believed that Day really contemplated a financial cataclysm, or discerned the impending necessity which so soon compelled his assignment. It seems to be always possible, after the event, to discover plausible reasons why it should have been foreseen; but it should be remembered that the retrospect has this advantage, at least, that it is illuminated by facts which gave but little, or uncertain, light to the prospect. Such facts should be viewed only in reference to the light which they actually shed upon the prospect.

Had the bank reasonable cause to believe that Day was insolvent? The bank, of course, knew of Day's large indebtedness to it. But it did not know of any considerable indebtedness which he owed elsewhere, or that he was incurring indebtedness elsewhere. It knew that he was a man of large property and was doing a large business. It knew that he owned a large amount of lands in the states of Minnesota and the Dakotas, which were estimated to be of large value. And while it knew that he did not meet promptly his obligations to it, and that he was probably unable to do so in the usual course of his business, it was yet willing to take his securities. For it no doubt believed that the value of his property exceeded the amount of his debts by a wide margin, and would be sufficient, with proper management, to pay all his debts, without insolvency. Day himself estimated the excess of his property above his debts at above

a half million dollars. The bank could not, with more certainty than Day himself, forebode the widespread financial ruin which was impending, nor that the value would so suddenly disappear from all properties, and especially from Day's property, leaving all in a state of collapse. While the evidence was perhaps sufficient to justify, it was not sufficient to compel, a finding that Day contemplated the execution of an assignment or anticipated insolvency at the time when he executed the transfers to the bank, nor that the bank either knew, or had reasonable cause to believe, that he was insolvent at that time. The finding is not clearly against the preponderance of the evidence.

*By the Court.*— The order of the circuit court is affirmed.