## STEELE vs. SCHRICKER.

*April 8 — May 10, 1882.*

LOGS AND LUMBER: CONTRACT: CONVERSION: EVIDENCE. *(1) Evidence of conversion. (2) Official scale of logs best evidence of quantity: when secondary evidence admissible. (3) Title to chattels: Common source of title not questionable. (4) Oral evidence to explain written contract. (5) Conversion of chattels held as security — what constitutes. (6) Record notice of rights in lumber.*

1. Defendant took a conveyance of logs from one N. in such form as to give him a right to the possession thereof if N. had such right, and put such conveyance on record in the proper office; and when plaintiff demanded the logs under a title adverse to N., defendant did not disclaim any right to them, and pending this action he sold

them. *Held*, that upon this evidence the jury might find that he had converted the logs at the commencement of the action.

2. Where it appears that logs were scaled by the proper officer (as provided by statute), oral evidence of the quantity of the logs is not admissible, unless it is shown that no record of such scale was made, and that no certified scale bill is in existence, or that, if in existence, it is in the hands of the opposite party, who has refused to produce it, on notice, or that it is in some other way out of the reach of the party offering the proof.

3. In an action for a conversion of chattels, defendant cannot question the title of the person under whom both parties claim unless deprived of his possession by one having a title superior to that.

4. Oral conversations had between the parties to a written contract, before its execution, cannot be received to explain it.

[5. N. was in possession of logs, under a contract between him and X. which provided " that the title, possession and right of possession" should be and remain in N. until full payment was made to him for all supplies furnished by him to X. under said contract; that during such time N. might "handle and sell " the logs, "reserving out of the proceeds sufficient to pay for said supplies, and paying the residue, if any," to X.; and that if said supplies should be fully paid for without a sale of the logs, these should then belong to X. TAYLOR, J., is inclined to think that under this contract N. could not pledge or mortgage the logs as security for a debt due him, and especially for an amount in excess of the sum due him from X. for supplies; and that such a mortgage would be a conversion, and would confer no right of possession upon the mortgagee as against X. But the question is not decided.]

6. The record of the contract above stated, in the proper inspector's office, was notice to all persons of the interest of the several parties thereto in the lumber, although the recorded mark on the lumber was that of N. R. S., sec. 1739.

APPEAL from the Circuit Court for *Chippewa* County.

The case is thus stated by Mr. Justice TAYLOR:

" Action to recover the value of a quantity of pine logs which plaintiff claims to own, and which he alleges to have been unlawfully converted by the defendant. It appears that the logs were cut and banked by Langley & Blaisdell, under a contract between them and one S. M. Newton, in the season of 1878-9. Under said contract the logs were

marked with a mark recorded in the proper office as the mark of said S. M. Newton. The plaintiff claims the logs by a purchase from Langley & Blaisdell, and the defendant claims under a transfer from Newton. The clause in the contract between Newton and Langley & Blaisdell, under which Newton claimed the right to the possession of the logs (which right the defendant claims was conveyed to him), reads as follows: ' It is further mutually agreed that the title, possession and right of possession of all of said second-mentioned mark of logs shall be and remain in the second-named party till full payment is made to the second-named party for all supplies bought for the first-named party as aforesaid, during which time the second party may handle and sell the same, reserving out of the proceeds sufficient to pay for said supplies, and paying the residue, if any there be, to the first-named parties; [and] that when said supplies are fully paid for, if the same is paid without a sale of said second-mentioned mark of logs, then said mark of logs shall belong to the first-named parties.'

" The logs in dispute in this action are the ones mentioned in this extract from the contract; and Langley & Blaisdell were the first parties and Newton the second party therein. The first mark of logs mentioned in the contract were to belong to Newton absolutely when cut and banked, and he was to pay the first parties for the same four dollars per thousand — one dollar per thousand as fast as the logs were banked; one dollar per thousand on the first of April, 1879; one dollar per thousand on the first of August, 1879; and one dollar per thousand on the first of November, 1879. The logs of both kinds were to be scaled as fast as delivered on the bank, and a scale bill was to be delivered to Newton at Chippewa Falls each month after logging operations commenced, which scale bill should show the amount in feet of logs of each mark, and the number of logs of each of the lengths mentioned, banked at the date of such scale bill.

" It appears to have been admitted, or established by the proofs on the trial, that Langley & Blaisdell had cut, banked, marked and scaled of the first mark of logs mentioned in said contract 2,200,000 feet, in round numbers, previous to March 17, 1879; that on the 19th day of March, 1879, they sold their claim to the second mark of logs to the plaintiff in this action; that on the 17th day of March, 1879, Newton made, executed and delivered to the defendant, a written transfer of his interest in the said second mark of logs, of which the following is a copy: ' This indenture, made and concluded this 17th day of March, A. D. 1879, witnesseth that, whereas *Lorenzo Schricker* has from time to time made advances of money to the undersigned, and may from time to time make other advances; now, therefore, this indenture witnesseth, that I, the undersigned, hereby sell, transfer, set over and deliver unto the said *Lorenzo Schricker*, his heirs and assigns, as collateral security for such advances as the said *Schricker* has [made] or shall hereafter make unto the undersigned, all my right, title and interest in and to certain logs which have for a bark mark [log mark], and for an end mark S. N., and other logs having for a bark mark T. diamond P., and for a stamp mark B. N. L., and still other logs having for a bark mark [log mark], and for an end mark H. It is hereby expressly understood and agreed that if the undersigned, his heirs, executors or assigns, or any persons for them, shall well and truly pay or cause to be paid unto the said *L. Schricker*, his heirs, executors or assigns, whatever advances may have been made by the said *L. Schricker*, with all interest at the rate of ten per cent. per annum that has accumulated thereupon, then this indenture shall be null and void and of no force whatever, and the full title and control of the above described logs shall revest back to the undersigned, but otherwise to remain of full and binding force and effect.'

" The logs described in said contract as having for a bark

mark 'T. diamond P.,' and for a stamp mark 'B. N. L.' are the logs described in the contract between Langley & Blaisdell and Newton as the second mark of logs, and are the logs in controversy in this action. On the 7th day of May, 1879, the plaintiff served a written demand upon the defendant for the logs in question, in the following words:

" ' *To Lorenzo Schricker:* I hereby demand a delivery to me of that certain lot of pine logs cut during the winter of 1878 and 1879 by Langley & Blaisdell, in Chippewa county, Wisconsin, and now on the waters of the Chippewa river in said county, and marked for a bark mark as follows: T. diamond P., and stamped upon the end thus, B. N. L., and which I have purchased of said Langley & Blaisdell, and which you claim to hold by virtue of a conveyance to you by S. M. Newton, by instrument dated March 17, 1879, and filed for record the same day in the office of the lumber inspector of the sixth district of Wisconsin, at Chippewa Falls.                                    EDWARD H. STEELE,

" ' By BINGHAM & PIERCE, his attorneys.

" ' *Dated May* 7, 1879.'

" The complaint was in the ordinary form, alleging the ownership of the logs by the plaintiff, and a conversion by the defendant, and claiming judgment for their value. The answer was a general denial. Upon the trial in the circuit court the plaintiff had a verdict and judgment; and defendant appealed from the judgment."

For the appellant there was a brief by *Wheeler & Marshall*, and oral argument by *Mr. Marshall.*

For the respondent there was a brief by *Bingham & Pierce*, and oral argument by *Mr. Bingham.*

TAYLOR, J.  The learned counsel for the appellant assigns as errors: (1) That there was no proof given on the trial showing any conversion of the logs in question by the defendant at the time the action was commenced. (2) That

the court erred in admitting Blaisdell's testimony as to the scale of the logs and the quantity thereof. (3) That the court erred in refusing to allow proof of title in a stranger. (4) That the court erred in refusing the testimony offered by the defendant to aid in the construction of the contract between Langley & Blaisdell and Newton. (5) That the court erred in refusing to submit proper questions to the jury as a special verdict. (6) That the verdict is not sufficient to sustain a judgment in favor of the plaintiff.

Without giving any statement or even summary of the evidence tending to prove a conversion of the logs by the defendant, we think it was sufficient to sustain a verdict in the plaintiff's favor upon that point, if he showed himself entitled to the possession at the time he commenced his action. The defendant not only took a conveyance of the logs from Newton in such form as to give him a right to the possession thereof if Newton had such right, but he put such transfer on record in the office prescribed by law for the record of all claims and titles to logs. This act was a declaration on his part that he made claim to the right of possession, at least, of these logs. When they were demanded of him, he did not disclaim any right to them; and afterwards, and pending the action, he sold them. We think this evidence was sufficient to go to the jury on the question of conversion at the time the action was commenced. See *Smith v. Schulenberg,* 34 Wis., 41.

The exception to the parol evidence of Blaisdell, as to the number of feet of logs in controversy, we think was well taken, and should have been sustained by the court. The scaling and measuring of logs and lumber has been deemed of sufficient importance to those engaged in the business of lumbering to call for legislative regulation, and for the appointment of officers who are charged with the duty of making such scales and measurements and preserving records thereof. Their duties in this respect are defined in

sections 1734–1737, R. S. 1878. Section 1735 provides that "each lumber inspector shall, in person or by deputy, at the request of any owner of logs, timber or lumber, after a scalement or measurement thereof, make a bill stating therein the number of logs, the number of feet, board measure, contained in such logs and lumber, and the number of feet, cubic, running or board measure, contained in said timber, and at whose request the same were scaled or measured, and to whom scaled or measured, a copy of which bill he shall enter upon the books of his office to be provided by him and kept for that purpose, with the marks as they occurred upon the logs. A correct bill of the same shall be given to such owner, with a certificate thereto attached that it is a true and correct bill, which bill, so certified, shall be presumptive evidence of the facts therein contained, and of the correctness of such scalement or measurement, in all courts, except in favor of the inspector who made the same."

It will be seen that the contract between Langley & Blaisdell and Newton provided for scaling the logs in question in the manner prescribed by the statute; and the evidence given on the trial shows that such was made, and was probably delivered to Newton. There is perhaps, a legal presumption that the inspector who scaled the logs did his duty in this respect, and entered the scale in the books of his office, and furnished a properly certified bill to Newton, who appeared to be the owner of the logs so scaled.

The legislature having provided that written evidence of the measurement of logs and lumber should be made by a public officer, and a record thereof preserved in a public office, and that a certified bill thereof, made by him and delivered to the owner, should be presumptive evidence of the correctness of such scalement or measurement in all courts, except in favor of the person making the same, such written evidence, when it exists and is attainable, must be deemed the best evidence of the number of feet in the lot of logs so scaled and meas-

ured. Certainly it is better evidence than the recollection of an interested party, who did not make any measurement himself, and testifies from his recollection as to the contents of the scale bills which came under his observation at the time the scale was made. · This question was considered by this court in the case of *Fornette v. Carmichael*, 41 Wis., 200; and it was there held that when it appeared that a scale of the logs had been made as provided by law, and such scale was in existence, it was the best evidence, and should be produced, or some sufficient reason shown why it could not be produced. Justice LYON, in his opinion, speaks of the scale made in proper form as a written instrument, the contents of which cannot be shown by parol proof. The doctrine of that case is not questioned in the case of *Tewksbury v. Schulenberg*, 48 Wis., 577. In the latter case the scale of the logs in question was not made by a public officer, and it was held that where the scale was in fact made and entered into a scale book, which was in the possession of the opposite party, who had been notified to produce it and refused so to do, it was competent to prove the contents of the scale book by one who helped make the scale and had seen the entries made in the book. In the case at bar there was no proof made that the certified scale had been lost and that no record had been made thereof in the proper office; nor was Newton, in whose possession the original certified scale bills were presumed to be, required to produce the same, or subpœnaed to produce them on the trial. We are clearly of the opinion that there was no foundation laid for proving by parol the contents of the scale bills; and we are also of the opinion that it is improper to give parol evidence of the quantity of the logs, in board measure, by estimates made by men who had seen and examined them, when it appears that a scale and measurement thereof has been made by an officer appointed for that purpose, unless it be further shown that no record of such scale has been made

as required by law, and no certified scale bill thereof is in existence, or that, if in existence, it is in the hands of the opposite party, who upon notice has refused to produce the same, or is in some other way out of the reach of the party offering such proof.

As to the third assignment of error, we think the circuit court properly excluded the evidence offered by the defendant showing that Langley & Blaisdell were not the owners of the lands upon which the logs in question were cut, for two reasons: *first*, because the evidence that they did not own the lands from which the logs were cut would not prove that they were not the owners of the logs; and *second*, because the right to the possession of the logs by the defendant, if he had any such right, was derived from the said Langley & Blaisdell through Newton. Having obtained the possession of the logs in question from the same persons under whom the plaintiff claims, it is very clear that the defendant cannot question the title of the party under whom both parties claim, unless some third person having a better title has deprived the defendant of his possession derived from the plaintiff's vendor. The question raised by this exception was ruled against the defendant by this court in the case of *Weymouth v. Railway Co.*, 17 Wis., 550. The late learned Justice Paine, in his opinion in that case, says: "We think also that the court properly instructed the jury that if they found that the plaintiff was in possession of the land from which the wood was cut, and in possession of the wood, the defendant could not defeat a recovery by showing title to the land in Ogden, there being no offer 'by the defendant to connect itself with such title. It is true, there are cases where it is stated generally that in trover the defendant may show title in a third person; but that should be understood as assuming that the defendant offers at the same time to connect himself with such title." The cases cited by the learned counsel for the appellant, which hold that title in a

third person is a defense to the action, are all cases of replevin and not for conversion. The rule in replevin has always been different from that in trover or trespass *de bonis*.

The circuit judge was clearly right in excluding the evidence of conversations between the parties before the execution of the written contract. Oral conversations had between the parties to a written contract cannot be received as explanatory of the writing. Such conversations do not come within the rule that "you may show the facts surrounding the parties at the time, and the situation in which they were placed, in order to interpret the meaning of what they say in their contract." Professor Greenleaf says: "Evidence which is calculated to explain the subject of an instrument is essentially different in its character from evidence of verbal communications respecting it." The conversations between the parties previous to making the written contract are clearly verbal communications respecting it, and must be excluded as such. The questions asked and excluded were the following: "What was said between you and Blaisdell at the time of making the contract, with reference to making advances of supplies on the T. diamond P. logs?" "State fully the circumstances attending the making of the contract, which occurred at the time the contract was made." This was not evidence which was calculated to explain the subject of the writing or aid in its interpretation, but was clearly intended to show what construction the parties put upon it at the time it was made, and is clearly inadmissible.

As we have concluded that the judgment must be reversed because of the error in admitting the parol evidence as to the scale of the logs, it is unnecessary to consider the other objections to the record made by the learned counsel for the defendant, as they relate to matters which may not arise upon a re-trial.

Whether Newton's mortgagee was entitled to hold the possession of the logs in question under the provisions of the

contract between Langley & Blaisdell arid Newton, giving Newton the right to the possession and the right of sale to reimburse himself for any advances which he may have made to Langley & Blaisdell under the contract with them, does not seem to have been definitely passed upon by the court below. In fact, it appears to have been doubtful whether any advances had been made on the contract by Newton at the time the action was commenced, in excess of what was then due to said Langley & Blaisdell upon the first mark of logs got out by them for Newton; and, for anything appearing upon the record, the jury may have found from the evidence that at the time the action was commenced nothing was due from Langley & Blaisdell to Newton for such advances, and so the defendant had no right to hold possession under that clause in the contract. I am inclined to think that under the contract Newton would have no right to pledge or mortgage the logs in question as security for a debt due from him, and especially to mortgage or pledge them for an amount in excess of the sum due to him for advances made under the contract, and that his doing so would be a conversion of the logs by him, and would confer no right of possession upon his mortgagee as against Langley & Blaisdell or their vendee. But this question we do not decide definitely, as we are unable to see that it was passed upon on the trial in the court below.

The contract between Langley & Blaisdell and Newton was duly recorded in the proper inspector's office, and so was notice to the defendant and all other persons of the interest which Newton had in the logs in question; and he cannot claim to be a *bona fide* purchaser because the logs were marked with the recorded mark of Newton. He is chargeable with knowledge of the right of Langley & Blaisdell as to the logs in question, notwithstanding the recorded mark was Newton's. See sec. 1739, R. S. 1878.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.