Murray Hill Land Co. vs. Milwaukee Light, Heat & Traction Co.

MURRAY HILL LAND COMPANY, Respondent, vs. MILWAUKEE
LIGHT, HEAT & TRACTION COMPANY, Appellant.

*May 2 — May 21, 1901.*

*Street railways: Deeds: Construction: Plats: Dedication of highway:
Revocation: Reference in deed: Ambiguity: Parol evidence: Prac-
tical location: Change of grade of street: Damages: Release: No-
tice: Innocent purchaser: Injunction: Rights of abutting owner.*

1. Plaintiff in platting its lands indicated a street called W. street, and
   after recording such plat sold lots fronting thereon, many of which,
   as well as many of those retained, had no access to any other street
   or alley. Before the recording of such plat plaintiff executed and
   delivered to a railroad corporation, the predecessor of defendant,
   a warranty deed granting "the right to construct, build, and op-
   erate a railroad . . . upon, over, and along that certain tract,
   piece, or parcel of land . . . known as W. street . . . ac-
   cording to the plat" of plaintiff, and therein released the railroad
   corporation from damages occasioned by the "construction, opera-
   tion, and maintaining a railroad upon said street." In considera-
   tion of being allowed to construct its road thereon, the railroad
   company agreed to grade and prepare W. street for public use,
   with a space on each side of its tracks for vehicles and for the
   construction of sidewalks, which was done. *Held,* that the rail-
   road company was not thereby granted the exclusive use of W.
   street for railroad purposes, and that the deed did not operate as a
   revocation of an incomplete dedication but granted to the railroad
   company the right to lay and maintain its tracks upon a strip of
   land, which was, as between the parties, a street, and which was
   intended to remain such.
2. Where a land company granted a railroad corporation the right to
   construct and operate a railroad on a strip of land known as W.
   street, according to the plat of said land company, the reference in
   the deed to the plat, in the absence of any indication of intention
   to abandon or supersede the plat, is not simply for the purposes of
   description and location, but imports the plat into the deed, and
   as between the parties to the deed the strip of land is a street.
3. Where a land company granted a railroad corporation the right to
   construct and operate its railroad on W. street, words in the deed
   granting it "all the rights incident to and necessarily and com-

monly used in connection with the operation of a railroad," at most introduce an element of uncertainty and ambiguity, rendering admissible parol evidence of the circumstances and situation surrounding the parties at the time of the grant.

4. Such provision in the conveyance to the railway company in view of the surrounding facts and circumstances is *held* not to control and overrule other clauses granting the mere right to lay and operate tracks upon the grade of an existing street, conforming substantially to the natural surface of the ground, as had theretofore been agreed upon.

5. Facts showing that said railroad corporation had graded the street in accordance with such agreement, laid its tracks thereon, and occupied and operated them for about four years, present circumstances showing practical location and use, and any indefinite and ambiguous terms of the grant as to place and manner of use become thereby limited and fixed.

6. The grant being thus construed and made certain, and not being a grant of any right to the railroad corporation to change the grade of W. street, the release of damages contained in such deed is *held* to be a release only of such damages as would arise from the construction and use of the railroad in accordance with the terms of the grant, and not of such as would result from the railroad company changing the grade of the street.

7. A street-railway corporation formed under ch. 86, Stats. 1898, does not possess the powers granted by subd. 5, sec. 1828, Stats. 1898, to commercial railroads organized under ch. 87, to change the course and direction of highways, or carry them over or under its track, hence the powers possessed by the defendant to interfere with the grade of W. street must be such as it has acquired by grant.

8. Where a deed to a railroad company was ambiguous, and conferred only a limited right to operate its road in the center of a street, subject to the rights of the public to use it as a public street, and the company, after exercising the rights granted for four years, conveyed its right to defendant in the same language as was used in the original deed, the grantee, not having inquired as to the facts and circumstances surrounding the original transaction, is not entitled to claim any rights as an innocent purchaser.

9. Where a street is not within the limits of any city or village, abutting owners are entitled to an injunction restraining a street-railway company from changing the grades thereof, unless such right is acquired by condemnation proceedings under sec. 1863*a*, Stats. 1898.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Affirmed.*

This is an action in equity by an abutting property owner to restrain the defendant from changing the grade of a certain highway, and to restore that part of the highway already changed, and for damages by reason of the acts already done. The defendant, by answer, claimed, in effect, that it had an absolute right of way over the whole of the alleged highway, including the right to change the grade thereof as might be reasonably necessary; and that the plaintiff had, for a consideration, duly released all its claim for damages by reason of the construction and maintenance of a railroad on the land in question.

The action was tried by the court. The evidence showed: That the plaintiff was a Wisconsin corporation, whose business, among other things, was the buying, selling, and improving of real estate, and that in March, 1889, it became the owner of a large tract of land lying west of the city of Milwaukee, and between that city and the village (now city) of Wauwatosa. That in April and May, 1889, it caused said tract of land to be surveyed and subdivided into lots and blocks, with streets, and a map to be made thereof, which map was duly certified by the surveyor, and acknowledged by the proprietor before June 16, 1890, and on that day submitted to the county board of supervisors of Milwaukee county for its approval, as provided by law, and duly approved by that board August 20, 1890, and duly recorded in the register's office of Milwaukee county on said last named date. That on said plat there was indicated a street called Wells street, eighty feet in width, and extending east and west through the platted lands a distance of about 4,000 feet, upon which 133 lots fronted, most of which were inaccessible through any other street; said Wells street being nearly on a line with Wells street in the city of Milwaukee, and intended to be a continuation

thereof. That another east and west street called Grand
avenue appeared upon said plat, being one block south of
Wells street, upon which lots also faced, and that there
were a number of north and south streets marked upon said
plat at intervals of 550 feet. That after the recording of
the plat, August 20, 1890, the plaintiff sold many lots front-
ing upon Wells street, and also retained a large number of·
such lots, many of which lots have no access by any other
street or alley. That the Milwaukee & Wauwatosa Motor
Railway Company was a domestic railway corporation duly
incorporated in December, 1888, for the transportation of
persons and property between a point in the western limits
of the city of Milwaukee at the corner of Thirty-sixth street
and Wells street to the village (now city) of Wauwatosa, a
distance of about three miles. That said railway company
desired to build and operate its railway through the plaint-
iff's property, and as the result of negotiations between the
railway company and the plaintiff in April and May, 1890,
it was orally agreed that the plaintiff would grant to the
railway company the right to construct and operate its rail-
road along Wells street as marked upon the plat, and that
the railway company, in consideration thereof, would grade
said Wells street through its full width to a grade then
agreed upon between the parties, grading the outer fifteen
feet upon each side for the building of a sidewalk and the
center fifty feet after the manner of a highway. That in
June and July, 1890, said railway company graded said
highway in accordance with said agreement, the same being
constructed in the form and fashion of a street as usually
constructed in cities, some excavating and filling being
done, but the street following the natural contour of the
ground as nearly as the requirements of the operation of a
railway would permit. That on July 30, 1890, when said
grading was nearly completed, the plaintiff executed and
delivered to the railway company a deed in the form of a

warranty deed, granting certain rights over said strip of land to said company in the following words:

"The right to construct, build, maintain, and operate a railroad with either one or two main tracks upon, over, and along that certain track, piece, or parcel of land lying and being in the town of Wauwatosa, county of Milwaukee, state of Wisconsin, known as 'Wells street,' in Murray Hill, according to the plat of said first-party thereof, and situated in the northeast quarter and northwest quarter of section twenty-six (26), in said town of Wauwatosa, along, over, and upon which said tract, piece, or parcel of land the center line of the railroad of the party of the second part has been and is staked out and located along, over, and upon which the railroad of the said party of the second part is now located and graded, with all the rights incident to, and necessarily or commonly used in connection with, the operation of a railroad, whether the cars, engines, and trains of said railroad shall be operated by steam or by other motor power."

Said deed was made, however, upon the conditions, therein expressed, that if the said grantee, the Motor Railway Company, its successors, or assigns, should cease to occupy and use the premises described therein for the purposes thereby granted for five successive years continuously, or should cease for the period of five years continuously to operate its said railway, then the right of said grantee, its successor or successors or assigns, granted by said deed, should at once wholly cease and determine, and the premises should revert to the plaintiff, the grantor, freed from any and all claim or right of the said grantee, its successor or successors or assigns, therein; and said deed contained this further provision:

"And the party of the first part [the grantor] does hereby release all damages to its other lands by reason of construction and operation and maintaining a railroad upon said street hereinbefore mentioned and described."

Said deed was recorded in the office of the register of deeds of Milwaukee county on the 31st day of July, 1890.

It further appeared that soon after the execution of this

deed the railway company fully completed the grading as agreed, and that early in the year 1892 the plaintiff constructed a plank curbing between the sidewalk and the gutter on nearly the whole length of the street; that in the spring of 1892 the railway company, having constructed a viaduct over the valley of the Menomonee river directly east of said Murray Hill, proceeded to lay a double track railway over the entire length of Wells street in Murray Hill, the center line of said railway being the center of the street, and the road being laid upon the surface as previously graded, leaving fifteen feet upon each side of its tracks between the tracks and the curb in the form of an ordinary street; that said railway company operated its railroad upon said tracks in this condition until the year 1896, when it went into the hands of a receiver, who operated the same until August, 1897, when the same was conveyed by the receiver to one Clarke M. Rosecrantz, who, on December 9, 1897, conveyed the same to the defendant in this action, who thereupon took possession thereof, in both of said deeds the rights conveyed being described in the same terms as in the original deed to the railway company; that the defendant is a corporation formed in December, 1896, under ch. 86, R. S. 1878, and secs. 1862, 1863, ch. 87, for the purpose, among other things, of purchasing and operating street railways in the city and county of Milwaukee and elsewhere in the state; that, when the defendant purchased the motor company's railway in 1897, Wells street, in Murray Hill, was in the same form as it was constructed and graded in 1890, save that it was neglected and out of repair, and parts of it were washed and worn away by the action of rain, and the sidewalks obstructed by the caving in of the banks where the excavations had been made, but a part of the curbing being still in place and plainly to be seen, and the condition of the street being such as to indicate that it had been graded for use as a common public highway;

that from 1890 for several years thereafter said street was used somewhat for travel with vehicles and by people on foot, until, by reason of lack of repair, it became difficult of passage with wagons, but that portion of the same which was constructed for sidewalk purposes was in common 'use as a bicycle path until 1898; that in May, 1898, the defendant commenced to grade said street, cutting the same down from six to eight feet in some places and filling the same in others, thereby obstructing access to and reducing the value of plaintiff's lots fronting thereon.

Upon these facts the trial court held, in effect, that the deed of the plaintiff to the Motor Railway Company conveyed only the right to construct a railroad upon Wells street as a public highway, and that neither the railway company nor the defendant herein was entitled to occupy more than that portion of Wells street which was occupied by the Motor Company from 1890 to 1896, being not more than twenty feet in width in the center of said highway; that the plaintiff's plat, when approved by the county board of supervisors, was a complete dedication of Wells street, subject only to the limited right of the Motor Railway Company; that the Motor Railway Company was estopped from denying its previous agreement with the plaintiff, and the validity of such dedication; that the defendant took its rights with notice of the effect of the deed to the railway company and of such dedication; that neither the Motor Company nor the defendant was legally authorized to substantially change the grade of said highway; that the release of damages contained in the deed to the railway company only covered the damages resulting from the rights granted by said deed; that the alteration of the grade by the defendant constituted an unlawful appropriation of the plaintiff's property, and that it was the duty of the defendant to compensate the plaintiff before making such alterations of grade; and that the plaintiff cannot recover dam-

ages in this action, but is entitled to a judgment enjoining the operation of the defendant's railway upon any other grade than that originally constructed; and that such judgment should provide that if the defendant shall, within thirty days, begin condemnation proceedings, and prosecute the same with diligence, the court, on application, may suspend the enforcement of the injunction.

Judgment being rendered in accordance with these conclusions, the defendant appealed.

For the appellant there were briefs by *Spooner, Rosecrantz & Spooner*, and oral argument by *C. M. Rosecrantz* and *George P. Miller.*

For the respondent there was a brief by *Stark & Hansen*, and oral argument by *Joshua Stark* and *Otto R. Hansen.*

WINSLOW, J.    The plaintiff in this case claims that the defendant, under its conveyances, possesses simply the right to lay its tracks and operate its cars over the center portion of a public street, with no right to substantially change the grade of such street; while the defendant makes the broad claim that it owns an ordinary railroad right of way covering the full width of the alleged street, and may change the grade at will, and make such use of the entire tract as is reasonably necessary in the operation of a steam railway, provided such acts are done in in a reasonably careful and workmanlike manner.    This is the fundamental issue between the parties, and it naturally divides itself into two questions: first, what rights did the Motor Railway Company acquire under the terms of its deed of July 30, 1890? and, second, Has the defendant acquired any greater rights than those originally granted to the Motor Railway Company?    These questions will be considered in the order stated.

1. The Motor Railway Company was a railroad corporation organized under the general law, and possessed the

right of eminent domain. Had it condemned the strip of land in Murray Hill now known as Wells street, it would doubtless have acquired the right to exclusively use the whole width of the strip in any manner which, directly or indirectly, contributed to the safe, economical, and efficient operation of its railroad, not interfering with the rights of the public or adjoining landowners. This would include the right to change the location or grade of its tracks. Lewis, Eminent Domain, § 584; R. S. 1878, sec. 1851. The defendant's claim is, in substance, that the deed made by the *Murray Hill Company* to the Motor Company by its terms grants just such an estate or right; that, the plat of Murray Hill not having been recorded at the time the deed was made, the deed operated as a revocation of the projected, but incomplete, dedication of Wells street to the public use as a street; and hence that the Motor Company's rights were superior and paramount to any other rights in the strip of land, and that they have been conveyed to the defendant, which now owns them. If, as matter of law, the words of the deed are clear, and must be construed as claimed by defendant, we can see no flaw in the argument. The deed was in form a deed of warranty: It did not, however, in terms convey any parcel of land, but conveyed simply " the right to construct, build, and operate a railroad with one or two main tracks upon, over, and along that certain tract, piece, or parcel of land . . . known as Wells street, in Murray Hill, according to the plat of said first party thereof, . . . along and upon which said tract, piece, or parcel of land the center line of the railroad has been staked out and located, and along, over, and upon which the railroad of said party of the second part is now located and graded, with all the rights incident to and necessarily or commonly used in connection with the operation of a railroad," whether operated by steam or other motor power. The words used seem to have been carefully chosen; doubtless with a view

to clearly define the right granted. Do they, under any fair and reasonable rule of construction, mean that the Motor Company is thereby granted the exclusive use of an eighty-foot strip of land for railroad purposes? We have been unable to bring our minds to this conclusion. If such meaning had been intended, it would have been very easy to have so indicated in simple phrase and with few words. A grant of the strip of land to be used for railroad purposes would have accomplished the purpose. But in the present grant not only is there no strip of land granted, but even the ordinary expression "right of way" is not used. The grant is of "the right to construct, build, and operate a railroad with one or two main tracks upon, over, and along a certain tract of land" known as Wells street in a certain plat. Here there appears not only an omission to grant any land, but a specific reference to a certain street as indicated upon a certain plat. It is argued that this reference to the plat is simply for purposes of description and location, but we cannot so regard it. The principle is familiar that, as between private parties, a deed which conveys lands, describing the same by referring to an unrecorded plat, in effect imports the plat into the deed, and operates to estop the grantor from closing up the streets named in the plat which are appurtenant to the property sold. The parties, by their acts, adopt the plat. No sound reason is perceived why this just principle should not apply to the parties to the deed before us, especially as nothing appears upon the face of the deed indicating any intention to abandon or supersede the plat. Not only is no such intention manifest, but in a later clause in the deed releasing damages the expression is used, "the construction, operation, and maintaining a railroad *upon said street*," thus apparently definitely recognizing the character of the strip as that of a street. Of course, there can be no question but that the parties could agree upon a limited grant, and we think it reasonably clear from the terms

of the deed itself that they did agree that the railroad company should have the right to lay and maintain two tracks upon a strip of land which was, as between the parties, a street, and which was intended to remain such.

But it is urged that another clause in the deed clearly indicates an intention to grant a complete and exclusive right of way over the whole strip, namely, the clause which gives the railroad company "all the rights incident to and necessarily or commonly used in connection with the *operation* of a railroad," whether the cars be operated by steam or other motor power. While this clause must be admitted to be in some degree inconsistent with the mere right to lay and operate tracks upon the grade of an existing street, we do not think it can be considered as controlling and over-ruling the meaning and purport of the clauses first considered. At the most, this clause possibly introduces an element of uncertainty and ambiguity in the deed. The other clauses remain, indicating one intent; this clause remains, indicating an inconsistent intent; and the deed becomes ambiguous and uncertain in meaning. In such a situation the rule that parol evidence of the circumstances and situation surrounding the parties at the time of the grant may and should be consulted in order to ascertain its true meaning, is applicable. *Brittingham & H. L. Co. v. Manson*, 108 Wis. 221.

When the surrounding facts and circumstances are considered, all doubt as to the intention of the parties vanishes. There is no room for two opinions. Both parties intended that the strip of land called Wells street was to be in fact a public street, and that the tracks of the Motor Company were to be laid and used in the center of such street upon a grade conforming substantially to the natural surface of the ground, and which had theretofore been agreed upon. The facts all point in that direction. They are quite fully stated in the statement of the case, and need only be referred to

here.    The officials of the Motor Company knew of the plat-
ting of the land, and unquestionably knew also that the plat
was before the county board for approval, as required by
law, at the time the deed was made.    They must have known
also a fact which is very apparent, namely, that the grant
of an exclusive right of way to a railroad company over the
entire width of Wells street would defeat the whole purpose
of the plat, and render a great part of it absolutely inacces-
sible.    They had graded and prepared Wells street for use
as a public street with appropriate spaces for sidewalks and
for carriage travel, in accordance with a profile and grade
agreed upon, which grade differed but little from the natu-
ral grade, and afforded access to every lot fronting on the
street.    They had staked out the center line of their road
in the center of the proposed street after the manner of an
ordinary street railroad, and in consideration of such grad-
ing and preparation of the land for use as a public street
they received their grant of the right to construct and oper-
ate tracks thereon.    To say that an exclusive use of the
whole eighty feet was expected to vest in the railroad com-
pany under these circumstances, would be little less than
absurd.    But there are other circumstances which are, per-
haps, equally persuasive.    The right granted being, at best,
an ambiguous and uncertain one on its face, and the place
where the two permitted tracks are to be located and oper-
ated not being definitely fixed in the grant, it is permissible
also to consider the subsequent acts of the parties in practi-
cally locating their tracks and utilizing their grant in order
to determine the extent of the right granted, and determine
where and how, within the limits of the strip of land named,
it was intended to be used.    This is the doctrine of practical
location and use.    Lewis, Eminent Domain, § 290; *Janes-
ville C. Mills v. Ford*, 82 Wis. 416.    It appears that the
Motor Company, in 1892, laid its tracks upon the street,
occupying about twenty feet in the center thereof, and oper-

ated the same for about four years, and until the company became insolvent and went into the hands of a receiver. Circumstances showing practical location could hardly be stronger. We entertain no doubt that by these facts the indefinite and ambiguous terms of the grant as to place and manner of use became limited and fixed. The grant being thus construed and made certain, it is scarcely necessary to say that the release of damages contained in the deed must be construed as a release of such damages simply as would arise from the construction and use of the railroad in accordance with the terms of the grant, and, the grant not giving the railroad company any right to substantially change the grade of the street, the release does not cover any damages resulting from such a change.

2. Passing now to the rights of the defendant company, we are unable to see how they can be held to be any greater than the rights of the Motor Company. The defendant, being a street-railway corporation formed under ch. 86 of the Revised Statutes, evidently does not possess the powers granted by subd. 5, sec. 1828, to commercial railroads organized under ch. 87, to change the course or direction of highways, or carry them over or under its track. The only powers possessed by it in this case to substantially interfere with the grade of Wells street must be those which it has acquired by grant.

Having held that the original grant to the Motor Railway Company was not, on its face, a grant of the exclusive use of the eighty-foot strip of land called Wells street for railroad purposes, but only a limited right to lay tracks and operate cars thereon subject to its use as a public street, which was at best indefinite and ambiguous in its terms, it is evident that there is no room for the defendant to claim any rights as an innocent purchaser. Its rights were defined in the deed which it received in the same terms as the Motor Company's rights were described in its deed.

These rights were on their face limited, and, under the most favorable construction for the defendant, ambiguous and uncertain. The defendant was, therefore, put upon inquiry as to the extent and meaning of the original grant, and the rights of the Motor Company thereunder. Had inquiry been made, the facts appearing in the evidence would inevitably have been ascertained. Not having inquired when the duty of inquiry was imposed, it stands in the same position as if it had been informed of all the facts which would have been ascertained. These facts it is unnecessary to repeat, as they have been already fully referred to.

Upon the conclusions reached, we see no reason to question the appropriateness of the remedy granted to the plaintiff in this action. This highway is not within the limits of any city. The defendant, although a street-railway company, has now the right of condemnation over such a highway. Stats. 1898, sec. 1863a. No reason is perceived why it may not proceed to condemn in the manner provided by the general statutes, and thus acquire the right to change grades. Until it does so an injunction against its further attempt to change grades without legal right, and to the great injury of the plaintiff, seems entirely proper.

*By the Court.*— Judgment affirmed.