BURTON and others, Appellants, vs. DOUGLASS and others, Respondents.

*November 15—December 7, 1909.*

*Contracts: Construction: Agreement not to engage in business in city "or vicinity:" Ambiguity: Parol evidence.*

1. Practical construction placed by the parties in interest upon doubtful or ambiguous terms in a contract will exercise a great and sometimes a controlling influence in determining the construction to be placed thereon by the courts.

2. An agreement not to engage in the flour and feed business at a certain city "or vicinity" is *held* not to have precluded engaging in such business in villages about six and one-half miles from said city, both parties having practically so construed the contract—one by engaging in the business at such villages within a few months after the agreement was made, and the other by not objecting thereto until several years later, although prompt objection had been made when it was thought the agreement was about to be violated with respect to the city.

3. Parol evidence to show that at the time of executing a contract the parties substantially agreed upon the definition of an ambiguous term therein does not alter or add to the written contract, but simply goes to show what they meant when they used that term.

APPEAL from a judgment of the circuit court for Walworth county: E. B. BELDEN, Circuit Judge. *Affirmed.*

For many years prior to October 5, 1903, the firm of Douglass & Dunn was engaged in the business of selling flour and feed at the city of Lake Geneva. For some months prior to said date the firm of Burton & Denison was engaged in a like business, the firm consisting of *W. E. Burton* and *E. D. Denison.* On said date the firm of Douglass & Dunn (consisting of the defendants *Horace G. Douglass* and *Edward F. Dunn*) agreed to sell and convey to *Lucretia D. Burton* certain real estate owned by them in the city of Lake Geneva as well as their stock in trade and the good will of their business. The stock in trade was to be paid for at its inventory value, based

·on cost price.   For the remainder of the property the vendee agreed to pay $10,000, of which amount $2,000 was presently paid and the balance was to be paid on November 5th.   On the last-named date *Lucretia D. Burton, John E. Burton,* and *Ebenezer Davidson* formed a copartnership with the members· of the firm of Burton & Denison for the purpose of continuing the flour and feed and other business carried on by said firm and also for the purpose of carrying on the business purchased by *Lucretia D. Burton* from the firm of Douglass & Dunn. A portion of the property purchased by *Lucretia D. Burton* from Douglass & Dunn was purchased by the new firm and a portion of it was leased to it.   The trial court, in deciding the case, held that *Lucretia D. Burton* made the purchase from Douglass & Dunn as a mere intermediary and in behalf of the firm of Burton & Denison.   On the day the original ·contract between Douglass & Dunn was made (October 5th), a separate contract was entered into between the firms of Douglass & Dunn and Burton & Denison, as follows:

"Whereas, Douglass & Dunn have this day contracted to ·sell to *Lucretia D. Burton* their flour and feed business, to- .gether with the real estate upon which the improvements used to operate such business are situate; and, whereas, Burton & Denison, now in similar business, expect to repurchase such ·business of said *Lucretia D. Burton:* Now, therefore, it is mutually agreed by and between Douglass & Dunn and each ·of them and Burton & Denison and each of them, that in case the above-mentioned contract shall be carried out and such ·sale and purchase made, for value received, each in consider- ation of the promise of the other, that Douglass & Dunn or ·either of them, for a term of ten years at Lake Geneva or vi- cinity, shall not enter into or engage in the flour and feed business without first making an attempt and in good faith ·offering a reasonable price to purchase the flour and feed busi- .ness of Burton & Denison; and Burton & Denison agree for a term of ten years that they or either of them will not dispose of the flour and feed business of said last-mentioned firm or of either party to any third party without first making an ·offer in good faith and for a reasonable price of said business

to said Douglass & Dunn, but this agreement shall not pre-clude either partner of said last-mentioned firm from selling to the other partner or in taking in a third partner prior to December 1, 1903."

The payments called for by the contract between Douglass. & Dunn and *Lucretia D. Burton* were made, and the title to the property purchased passed to *Lucretia D. Burton* and her assigns, and thereupon the firm of Douglass & Dunn ceased to carry on its former business in Lake Geneva.

On January 16, 1904, the defendants *Horace G. Douglass* and *Edward F. Dunn* started a flour and feed business at the village of Williams Bay, located about six and one-half miles from Lake Geneva, and during the month of March following engaged in a like business at the village of Zenda, also located about six and one-half miles from Lake Geneva. In the meantime said defendants offered to repurchase the business sold to *Burton, Denison,* and *Davidson* at Lake Geneva. The offers made were rejected, and the court found that such offers. were not reasonable. Said defendants advertised the busi-ness carried on at Williams Bay and Zenda in the Lake Geneva newspapers, and sold a small quantity of flour and feed from such places to customers at Lake Geneva. On January 20, 1908, the defendant *Harold J. Douglass,* a son of *Horace G. Douglass* and a nephew of *Edward F. Dunn,* started a flour and feed business at Lake Geneva. This business was started with money contributed by the father,. mother, and uncle of *Harold J. Douglass.* Plaintiffs con-tended that this business was really that of the former firm of Douglass & Dunn, and that it was carried on under the name· of *Harold J. Douglass* for the purpose of evading the terms of the aforesaid contract. Until a short time before this ac-tion was begun, no claim was made by plaintiffs that the de-fendants had violated their contract by engaging in business at Williams Bay and Zenda.

The action was brought to enjoin the defendants from en--

gaging in the flour and feed business at Lake Geneva, Williams Bay, and Zenda, and other places in the vicinity of Lake Geneva, and to compel the defendants to account for the profits of the business carried on in violation of the contract. The circuit court found that *Harold J. Douglass* was conducting his individual business at Lake Geneva, and that the members of, the firm of Douglass & Dunn had no interest therein. The court further found that said firm did not engage in business in the vicinity of Lake Geneva within the intent and meaning of their contract, and judgment was entered dismissing the complaint, from which judgment this appeal is taken.

For the appellants there was a brief by *Quarles, Spence & Quarles* and *Charles S. French,* attorneys, and *J. V. Quarles, Jr.,* of counsel, and oral argument by *J. V. Quarles, Jr.*

For the respondents there was a brief by *Frederick Kull,* attorney, and *Ryan, Merton & Newbury,* of counsel, and oral argument by *T. E. Ryan.*

BARNES, J.  There is sufficient evidence to support the finding of the trial court that the business carried on at Lake Geneva by the defendant *Harold J. Douglass* was his own, and that his codefendants were not interested therein.

The trial court further found that the members of the firm of Douglass & Dunn did not breach their contract by engaging in business at Williams Bay and Zenda, as these places were not in the "vicinity" of Lake Geneva within the meaning of the term as used in the contract. The word "vicinity" does not express any definite idea of distance. Used in some connections it may mean a very trifling space; used in others it may mean thousands of miles. *In re Hancock St. Extension,* 18 Pa. St. 26; *State v. Meek,* 26 Wash. 405, 67 Pac. 76; *Schmidl v. Kansas City D. Co.* 90 Mo. 284, 1 S. W. 865, 2 S. W. 417; *Langley v. Barnstead,* 63 N. H. 246.

The parties to the contract no doubt intended that the firm

of Douglass & Dunn should not materially depreciate the value of the good will of the business sold, or of the business itself, by entering into active competition on a substantially even basis with the plaintiffs for trade naturally tributary to their store at Lake Geneva. Where this line should be drawn depends on the facts established. Some mere trifling and inconsequential encroachment would not be a violation of the agreement, as that would be a difficult thing to avoid, even if defendants engaged in business at a point remote from Lake Geneva. Any substantial encroachment, however, would be.

The contract being ambiguous in failing to prescribe a definite distance from Lake Geneva within which the firm of Douglass & Dunn should not engage in business, the construction placed thereon by the parties themselves becomes important.

Practical construction placed by the parties in interest upon doubtful or ambiguous terms in a contract will exercise a great and sometimes a controlling influence in determining the construction to be placed thereon by the courts. *Janesville Cotton Mills v. Ford*, 82 Wis. 416, 430, 52 N. W. 764; *Walsh v. Myers*, 92 Wis. 397, 401, 66 N. W. 250; *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* 110 Wis. 555, 566, 86 N. W. 199; *Jones v. Thomas*, 120 Wis. 274, 280, 97 N. W. 950; *Excelsior W. Co. v. Messinger*, 116 Wis. 549, 554, 93 N. W. 459.

The firm of Douglass & Dunn placed a practical construction upon the contract by engaging in business at Williams Bay within a couple of months after their contract with plaintiffs was consummated, and at Zenda a short time thereafter. It advertised its business in the Lake Geneva papers. Presumably the plaintiffs knew that the firm was selling flour and feed at the places named. If they did not, their business could not have been very seriously affected. Some eleven months after the business at Williams Bay was started, plaintiffs evidently supposed that the firm of Douglass & Dunn was

about to engage in business at Lake Geneva. They employed attorneys to write that firm and threaten suit in the event of such intent being carried out. No claim or assertion was made in that letter that any violation of the contract was claimed by reason of the business defendants were carrying on at Zenda and Williams Bay. On December 21, 1907, practically four years after the Williams Bay business was started, plaintiffs' attorney wrote another letter to *Horace G. Douglass,* stating in effect that one or more of the members of the firm of Douglass & Dunn were proposing to violate their contract by engaging in business at Lake Geneva under cover of the name of *Harold J. Douglass.* No claim was made that the firm of Douglass & Dunn breached its contract by engaging in business at any other point. In each instance in which anything was done to indicate that Douglass & Dunn contemplated starting a business at Lake Geneva, the plaintiffs were prompt to assert their contract rights. The fact that they did not do so as to other points, if they conceived that their rights had been infringed upon, is very significant. The inference was strong that this action was brought because plaintiffs believed that *Harold J. Douglass* was a dummy who in reality represented one or both of the members of the firm of Douglass & Dunn, and that the complaint in reference to the business at Williams Bay and Zenda was an afterthought. The course of conduct pursued by the parties is consistent with the view that each construed the word "vicinity" as not precluding the establishment of stores at Williams Bay and Zenda, and there is nothing established by the proofs in the case to indicate that such a construction of the contract was not correct.

It is by no means clear that the evidence of the witness *Dunn* was competent as to the definition of the word "vicinity," as used in the contract, given to the parties by the attorney who drafted such contract, and before it was signed. While evidence of surrounding circumstances and facts that

will place the court as nearly as may be in the position in which the parties stood when they made their contract is receivable to aid in the construction of an ambiguous contract, many cases hold that the rule does not go to the extent of permitting a party to testify to antecedent or contemporaneous oral agreements or conversations. *Johnson v. Pugh,* 110 Wis. 167, 170, 171, 85 N. W. 641; *Loree v. Webster Mfg. Co.* 134 Wis. 173, 177, 114 N. W. 449; *Hackley Nat. Bank v. Barry,* 139 Wis. 96, 120 N. W. 275; *Steele v. Schricker,* 55 Wis. 134, 12 N. W. 396; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 553, 93 N. W. 459; *Corbett v. Joannes,* 125 Wis. 370, 388, 104 N. W. 69; *Western L. & C. Co. v. Copper River L. Co.* 138 Wis. 404, 415, 120 N. W. 277. On the contrary, there are a number of cases holding that such evidence is competent to explain an ambiguity in the writing. *Ganson v. Madigan,* 15 Wis. 144, unqualifiedly so holds, and there are many cases where the rule laid down in this case is cited with approval, of which *Weber v. Illing,* 66 Wis. 79, 83, 27 N. W. 834; *Becker v. Holm,* 89 Wis. 86, 91, 61 N. W. 307; and *Rib River L. Co. v. Ogilvie,* 113 Wis. 482, 487, 89 N. W. 483, are examples. Other cases involving facts similar to those in *Ganson v. Madigan* and the case at bar, and holding parol evidence admissible, are *Nilson v. Morse,* 52 Wis. 240, 9 N. W. 1; *Wenger v. Marty,* 135 Wis. 408, 411, 116 N. W. 7; and *Perkins v. Owen,* 123 Wis. 238, 101 N. W. 415. No case in this court assumes in express terms to overrule *Ganson v. Madigan,* and in no case which we have been able to find involving a state of facts similar to those presented by the case at bar has parol evidence been held incompetent. The parties here substantially agreed on the definition of an ambiguous term which occurred in their contract as drafted. Parol evidence to establish that fact does not alter their written contract, and neither does it add to it. It simply goes to show what the parties meant when they used the term "vicinity" and what the contract now in fact means.

Regardless of this evidence, however, and of the finding made thereon by the trial court, there is sufficient evidence in the case to sustain the finding of the court to the effect that neither the firm of Douglass & Dunn nor the individual members thereof engaged in business in the "vicinity" of Lake Geneva, particularly in view of the construction placed upon the contract by all the parties thereto.

*By the Court.*—Judgment affirmed.