## WILL OF PULLEN.

*October 25—November 13, 1917.*

*Executors and administrators: Claims against estate: Witnesses: Competency: Transactions with decedent: Reformation of instruments: Receipt: Construction of contracts by parties: Appeal: Considering evidence admitted without objection.*

1. A claim against a decedent (claimant's brother) was based on guaranties signed by decedent and others, including one K. Claimant had been present and overheard negotiations between his brother (who was then acting in his behalf) and K., in which a partial settlement of the matter was made, and had acquiesced therein and received the fruits of such settlement. *Held*, that he thereby became a party to such negotiations and, under sec. 4069, Stats., was incompetent to testify to the transaction as against the estate of his brother.

2. Claimant, a banker of experience, having at the time of said partial settlement read an instrument acknowledging the receipt from his brother and K. of a certain sum of money as part payment of his claim against the guarantors, and then signed it although he knew that so far as he was concerned it did not express the agreement that had been made, was not entitled, as against his brother's estate, to have such receipt reformed, he not having exercised reasonable care on his own part.

3. The parties having in such instrument or receipt made a deliberate declaration of their construction of the obligations arising out of their previous contracts of guaranty, such declaration is binding upon the claimant, who signed the receipt and afterwards produced it in court and asked to have it reformed, and

also upon the estate of the deceased guarantor, which relied upon the receipt as its sole defense against the claim; and the estate is accordingly held liable for that part of the claim which the receipt shows was not discharged.

4. Documents received in evidence by the trial court without objection may properly be considered by the supreme court on appeal.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

The appeal is from a judgment affirming a judgment of the county court disallowing appellant's claim against the estate of Charles F. P. Pullen.

February 10, 1905, the claimant, *George L. Pullen,* purchased from the Gold Crest Mining Company 80,000 shares of its capital stock for the sum of $5,000. Such purchase was made in reliance upon a written guaranty made and executed at the same time by which the deceased, Charles F. P. Pullen, a brother of claimant, and M. D. Kelly and P. J. Somers, jointly and severally agreed that if, at any time within two years, claimant became dissatisfied with the purchase and so desired, those three would take the stock off his hands and repay him the $5,000. On March 25, 1905, upon a like guaranty, a purchase of 20,000 additional shares for $1,000 was made by claimant. On February 7, 1907, a written demand was made upon the three for the repayment of the $6,000; and then, in consideration that the time for the repurchase of such stock should be extended another two years, so that the money might be used in developing the mining property, another guaranty was signed by the same three for such repurchase of such stock upon demand and containing a further agreement to indemnify the said *George L. Pullen* for any loss he might sustain prior to February 10, 1909, by reason of his retaining the stock aforesaid.

On February 8, 1909, claimant made another tender of the 100,000 shares of stock to the guarantors and demanded

the payment of $6,000, making no mention, however, at that time of any claim for any alleged loss in addition thereto. Again the guaranty was extended, and then on January 23, 1911, the claimant again tendered the stock to the guarantors and again demanded the payment of $6,000. The stock of the Gold Crest Mining Company at this time had become worthless and was delivered by claimant to Charles F. P. Pullen. In the meantime Somers went to Goldfield, Nevada, and Kelly to Muncie, Indiana.

On March 5, 1913, the claimant and the deceased went to Muncie and met Kelly there. At that time, by reason of negotiations which appear to have been conducted by said Kelly and the deceased, some in the presence and hearing of the claimant, certificates for sixty shares of the par value of $6,000 of the Muncie National Training Corporation and then the property of Kelly were transferred and delivered by Kelly to the deceased and by him, at the same time, to the claimant. A document was then signed by appellant which was in substance as follows: Acknowledged the receipt of the sum of $6,000 then paid to him by Charles F. P. Pullen of Milwaukee, Wisconsin, and M. D. Kelly of Muncie, Indiana; that the said sum is paid by the said Pullen and Kelly and received by claimant as *part payment* for the repurchase of 100,000 shares of the capital stock of the Gold Crest Mining Company and *to make claimant whole of loss* sustained by reason of said purchase; that the said sum is paid at claimant's request pursuant to the contract in writing made in the spring of 1905 between the three heretofore named, jointly and severally. It also stated that the substance of such prior agreement was to repurchase said stock upon demand and to *make whole* said *George L. Pullen from any and all loss* by reason of the purchase of said stock. It recited further that, said *George L. Pullen* having demanded of the three the repurchase of said stock and that they *make him whole from any and all loss* as agreed, the said Charles F. P.

Pullen and M. D. Kelly do make payment of said sum of $6,000, "being the approximate *two-thirds share* of the *purchase price* for said stock paid by the said *George L. Pullen* and *loss sustained by him by reason of the payment and investment aforesaid.*" (The italics are for convenience in this statement only.)

It is undisputed in this proceeding that as a matter of fact no cash was paid in March, 1913, at the time of the executing of the receipt or at any other time, either by Charles F. P. Pullen or Kelly, to claimant on account of this transaction, and that the $6,000 referred to in such receipt was nothing else than the sixty shares of the par value of $6,000 of said National Training Corporation.

Charles F. P. Pullen died in September, 1913, and appellant made claim against his estate for $9,630, which was itemized as being the $6,000 purchase price spoken of above and interest thereon amounting to $3,630. On the trial in the county court upon such claim and the executor's objections thereto it was disallowed in whole. An appeal from such disallowance was taken to the circuit court, and, upon the trial there, findings were made in effect that the written receipt of March 5, 1913, reciting the receipt of $6,000 was a payment and satisfaction of the entire liability of both Kelly and the deceased upon their guaranty contracts, and that therefore, the said Kelly and the deceased having paid to *George L. Pullen* the full amount of their liabilities, the estate was not indebted to the claimant upon such claim. From judgment entered in accordance therewith an appeal was taken to this court.

*Frank M. Hoyt* of Milwaukee, for the appellant.
*Edgar L. Wood* of Milwaukee, for the respondents.

ESCHWEILER, J. The appellant, claimant herein, insists that upon the testimony he was entitled to have the receipt signed by him of March 5, 1913, the substance of which

has been recited above, reformed so that it would show what he claims was the real intent of the three parties therein concerned, viz. that the transfer of the sixty shares of the Muncie National Training Corporation by Kelly to the deceased and by him to the claimant was a discharge and satisfaction of M. D. Kelly alone from all liability, and that it was then received by claimant, as between him and the deceased, as collateral security only, with the understanding that if upon the sale of such stock there was obtained more than the sum of $3,000 (being the approximate one third of the total liability and the proportionate share of M. D. Kelly for the same), such surplus should be credited in favor of deceased upon the unpaid balance. That being done, that then, there having been nothing received on account of such stock, it having become worthless, his claim should be allowed for the full $6,000 and interest.

Both claimant and Mr. Kelly testified with reference to the interview at Muncie at the time of the signing of the receipt, and the testimony of each was received over the objections interposed on behalf of the executor.

The claimant was present and overheard the conversations carried on between Kelly and the deceased in which deceased was acting for his brother, the claimant. He was present and acquiesced in what was said and done at the time the form of the agreement was suggested to the attorney who thereafter dictated the same. His opportunity to object and his failure to do so while negotiations were going on was as much an approval of and participation in the same, under the circumstances shown in the evidence, as though he had expressly ratified all that his brother said and did, and then his receiving the fruits of such negotiations, all these made him a party, and not a witness merely, to what was going on, and therefore he was within the ban of sec. 4069, Stats., which provides in substance that no person shall be examined as a witness in respect to any transaction or communication by him personally with a deceased person through whom

title is derived or liability sustained. *Holway v. Sanborn,* 145 Wis. 151, 130 N. W. 95; *Anderson v. Laugen,* 122 Wis. 57, 99 N. W. 437; *Morgan v. Henry,* 115 Wis. 27, 90 N. W. 1012.

In any event, it is very clear that upon the showing made by the claimant he could not have the receipt signed by him modified as he prays. He was president of a bank at Evansville and had been in the banking business for a great many years. He read the receipt and then·signed it knowing that it did not express the agreement that had been made so far, as he was concerned. He signed it, as he says, "without any qualms at all," and was willing to sign any paper, for the reason that he knew his brother always had and always would do the square thing with him.

His own showing is a complete negation of one of the most essential elements that must always exist in order to entitle a party to a written instrument to the aid of the court in reforming it, viz. the exercise of a reasonable degree of care on his own part. *Rayborn v. Galena I. W. Co.* 159 Wis. 164, 149 N. W. 701; *Steffen v. Supreme Assembly of Defenders,* 130 Wis. 485, 110 N. W. 401; *Deering v. Hoeft,* 111 Wis. 339, 87 N. W. 298; *Jackowski v. Ill. S. Co.* 103 Wis. 448, 79 N. W. 757; *Conant v. Estate of Kimball,* 95 Wis. 550, 70 N. W. 74.

Equity ought not to be asked to change such writings at the behest of one who, with full knowledge that it was not as he intended it should be, yet signed it with such utter and absolute indifference to his own interest. To do so would be to set a high premium upon heedlessness.

The rights, therefore, of the parties on this appeal are to be determined from the writings in evidence and without considering any testimony, either of claimant or of Kelly, tending to show that there was a different understanding in the minds of the parties and then expressed by them than is found embodied in the written receipt.

Although there is evident confusion on the face of the re-

ceipt of March 5, 1913, as to when the obligation to make
good any loss, in addition to the agreement to repurchase
the stock, first came into the transaction, yet the original
guaranties and the extensions thereof were received in evi-
dence without objection, are before the court, and may
properly be considered.

From all the documents it appears beyond question that
there was, first, a joint and several liability of Charles F. P.
Pullen, M. D. Kelly, and P. J. Somers to repay upon de-
mand $6,000, the purchase price of the Gold Crest mining
stock; and secondly, that during the period in which these
guaranties were extended there was an additional obligation
assumed on the part of the three to make claimant whole
from any loss that might be sustained by reason of his hav-
ing made the original investment of $5,000 and $1,000 re-
spectively.   What might have been intended by the term
"loss" at the time the parties originally assumed their ob-
ligation for such loss, whether it was interest or some other
element, is entirely immaterial in view of the agreement con-
summated by the parties at Muncie on March 5, 1913, and
evidenced by the receipt hereinbefore recited.

This receipt shows on its face that the parties then con-
sidered their contract obligation arising out of their former
writings to be such that there was a then total liability of
approximately $9,000, including two elements, one for the
repayment of the purchase price and the other for the loss
sustained by claimant by reason of such original purchase
and investment.   Six thousand dollars is expressly desig-
nated in this receipt as *part payment* for such repurchase
price and such loss and is also described as *approximately
two thirds* of the obligation for such repayment and such loss.
The parties, therefore, made a deliberate declaration by this
receipt of their construction of their contract obligations, and
such declaration is and ought to be binding on them.    *Burton
v. Douglass,* 141 Wis. 110, 114, 123 N. W. 631; 9 Cyc. 588;
6 Ruling Case Law, 852.

The claimant, of course, is bound by this receipt, first, because he signed it, and secondly, because he produced it upon the trial and asked to have it reformed. It is binding upon the estate of the deceased because it is relied upon as a defense and the only defense to appellant's claim.

The proper construction to be given to this receipt, therefore, is that it was an acknowledgment by all concerned that there was an obligation of the deceased and Kelly to the claimant of $9,000 and that such obligation was then and thereby satisfied and discharged by the payment of what was treated as $6,000 cash, leaving unpaid and undischarged what would be a joint and several liability for a balance of $3,000, and against which balance no defense is shown on behalf of the estate.

It is immaterial in this present determination of the rights and obligations of the deceased and the claimant in this action whether or not what was done at Muncie changed or affected the liability of Somers to the claimant under the original guaranties, or whether there can be any further claim against Kelly after the admission by the claimant that the transaction was a complete discharge of Kelly from all obligation. There is no foundation for a dispute in this case but that the $3,000 balance over the $6,000 expressed in the receipt is due and unpaid from the estate, unless the receipt itself is to be construed as a total discharge of the entire obligation. This, we have seen, it is not, and for that reason the judgment below must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment in favor of claimant against the estate of the deceased for the sum of $3,000, together with interest thereon from March 5, 1913, together with his costs and disbursements.