RIB RIVER LUMBER COMPANY, Appellant, vs. OGILVIE and another, Respondents.

*February 19—March 11, 1902.*

*Contracts: Ambiguity: Parol evidence.*

A contract for the sale of all the lumber of certain grades "(estimated to be about four million feet, more or less), obtained from about six million feet of white pine sawlogs now banked and being banked at W.", evidently refers to the product of a certain lot of logs, and not the product of six million feet of logs, and parol evidence of the situation surrounding the parties is admissible to identify and explain what particular lot of logs was referred to.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action for breach of contract for the sale of lumber. The plaintiff is a Wisconsin corporation, which in the year 1899 was engaged in dealing in lumber at the city of Toledo, Ohio. The defendants at the same time were copartners engaged in the manufacture of lumber at West Superior, Wisconsin, under the firm name of Ogilvie & Turrish. On the 2d day of March, 1899, a contract was made between the parties, the material part of which was as follows:

"West Superior, Wis., March 2nd, 1899.

"*The Rib River Lumber Company* of Toledo, Ohio, hereby agree to buy, and Ogilvie & Turrish, of West Superior, Wisconsin, hereby agree to sell, the product of No. 2 common and better and shorts (estimated to be about four million feet, more or less) obtained from about six million feet of white pine sawlogs now banked and being banked at West Superior, Wisconsin, and to be sawed at the West Superior Lumber Company's mill during the sawing season of 1899."

Then follow in detail the prices to be paid for the different grades, and the terms of payment therefor. The complaint alleges that the defendants did not deliver the lumber of the grades specified in the contract, to the amount of 4,000,000 feet, nor in any amount exceeding 2,553,813 feet, nor did the defendants deliver the product obtained from about 6,000,000 feet of white pine sawlogs, but refused and neglected to carry out said contract on their part. The complaint further alleges performance of said contract on its part by the plaintiff, and its readiness to receive and pay for the balance of the lumber, and demanded judgment for damages in the sum of $5,547.07. The defendants by their answer admit the making of the contract, and in their evidence admit that only 2,553,813 feet of lumber were delivered thereunder; but they allege that the plaintiff knew at the time of the execution of the contract that the lumber purchased thereby was to be cut from a certain lot of logs then

and there being banked at West Superior, and that it was
to receive and did receive the product of said logs, and no
more, and that neither party knew the exact amount of lum-
ber that said logs would produce. At the close of the case
the respondents were given leave by the court to amend their
answer by inserting an allegation that the plaintiff received
all of the lumber of the grades specified in the contract which
was produced from 4,200,000 feet of white pine logs banked
at West Superior. By way of counterclaim the defendants
alleged that there was a balance due them upon the contract
of $1,695.29. In reply to the counterclaim the plaintiff al-
leged that said sum of $1,695.29 was the five per cent. re-
tained by the plaintiff under the terms of the contract until
final settlement.

Trial by jury was waived, and the case was tried by the
court. Findings of fact were made and filed by the court to
the effect that the defendants sold to the plaintiff the product
of certain specified logs, and that the same was to be deliv-
ered to the plaintiff at West Superior; that all of said prod-
uct was delivered to the plaintiff, except 130,000 feet of
lumber which was sold to another party with the consent of
the plaintiff; that said product was delivered as soon as
manufactured at different times up to July 25, 1899, and
that under the terms of the contract the balance remaining
unpaid became due October 25, 1899; and that the same has
not been paid. Upon these findings of fact the court con-
cluded that the defendants were entitled to judgment against
the plaintiff for $1,695.29, with interest, and that the com-
plaint should be dismissed. Judgment being entered in ac-
cordance with these findings favorable to the defendants, the
plaintiff appeals.

For the appellant there was a brief by *S. L. Perrin* and
*G. W. Kinney,* and oral argument by *Mr. Kinney.* They con-
tended, *inter alia,* that the contract was clear and without
ambiguity. *Wis. M. & F. Ins. Co. Bank v. Wilkin,* 95 Wis.

111. That the contract merged all previous negotiations, and is presumed in law to express the final understanding of the parties. *Brawley v. U. S.* 96 U. S. 168–173; *Creighton v. Comstock,* 27 Ohio St. 548; *Pembroke I. Co. v. Parsons,* 5 Gray, 589; *Bourne v. Seymour,* 81 Eng. Com. Law, 336; *Norrington v. Wright,* 115 U. S. 210; *U. S. v. Pine River L. & I. Co.* 89 Fed. Rep. 907–910; *Watsontown C. Mfg. Co. v. Elmsport L. Co.* 99 Pa. St. 605; *Allen v. Crank* (Va.), 23 S. E. Rep. 772; *Bullock v. Consumers' L. Co.* (Cal.), 31 Pac. Rep. 367; *Ormsbee v. Machir,* 20 Ohio St. 295, 305; *Johnson v. Pierce,* 16 Ohio St. 472. The words "about" and "more or less" and equivalent words, provide merely against accidental variations arising from slight and unimportant excesses, and deficiencies in number, measure or quality. *Brawley v. U. S.* 96 U. S. 168; *Cabot v. Winsor,* 1 Allen, 546; *Holland v. Rea,* 48 Mich. 218; *Pembroke I. Co. v. Parsons,* 5 Gray, 589; *Kirwan v. Van Camp P. Co.* 12 Ind. App. 1; *Tilden v. Rosenthal,* 41 Ill. 386.

For the respondents there was a brief by *Geo. C. Cooper* and *Archibald McKay,* and oral argument by *Mr. Cooper* and *Mr. B. W. Jones.*

WINSLOW, J.    While there are many exceptions preserved in the record, there is really but one question presented upon this appeal, and that is whether parol evidence was admissible to show the meaning of the contract between the parties. That contract provided for the sale by defendants to the plaintiff of all the lumber of certain grades "(estimated to be about four million feet, more or less) obtained from about 6,000,000 feet of white pine sawlogs *now banked and being banked at West Superior."* There is no dispute as to the amount of lumber actually received by the plaintiff under the contract. That amount was 2,553,813 feet, and it constituted all of the lumber of the grades specified (except 130,000 feet) manufactured by the respondents from

4,200,000 feet of white pine logs, which were all the logs banked by the respondents at West Superior. The plaintiff claims that the contract is clear and unambiguous, and that it bound the defendants to deliver the product of 6,000,000 feet of logs, while the defendants claim that the clause, "about 6,000,000 feet of white pine sawlogs now banked and being banked at West Superior, Wisconsin," shows on its face that it refers to a certain specified lot of logs, and that oral evidence of the situation surrounding the parties, and their conversations at the time the contract was made, was admissible to identify and explain what particular lot of logs was referred to by the language of the contract. The trial court took the defendants' view of the question, and admitted evidence freely of the nature referred to, against the objection and exception of the plaintiff. It is unnecessary to describe this oral evidence in detail. It was of the nature above referred to, and showed beyond doubt that the parties were negotiating concerning a definite lot of logs and timber which the defendants were then getting out in a certain locality, and banking at West Superior, and that the plaintiff received all the lumber of the grades specified which was manufactured from that lot, except 130,000 feet. If the testimony was admissible, it established the defense, except as to the 130,000 feet; and this the court found, under sufficient evidence, was sold to another party with the consent of the plaintiff. We have no doubt of the correctness of the court's ruling. Looking at the contract alone, we are obliged to say that it evidently refers to a certain lot of logs, namely, the logs already banked and which were in process of banking by defendants at West Superior. We do not know, however, how many feet the lot contains, except that the parties have estimated that it contains about 6,000,000 feet; but it is entirely evident that it is the lot which is sold, and not 6,000,000 feet. Such being the situation, the case is like one where all of the goods in a certain warehouse, or shipped

upon certain vessels, are sold with the statement that they amount to "about" a certain quantity. In such case the rule is well settled that the naming of the quantity is but an estimate of the probable amount, and that the amount sold is fixed by the amount actually in the warehouse or in the vessels. *Brawley v. U. S.* 96 U. S. 171. Evidence of the amount in the warehouse or vessels is not parol evidence contradicting or changing a written contract, but simply evidence making certain its meaning. Terms or expressions used in a contract which are either ambiguous, or on their face show that reference must be had to extrinsic facts to make their meaning definite and certain, may always be explained or identified by parol evidence of the surrounding facts and circumstances. *Ganson v. Madigan,* 15 Wis. 144; *Weber v. Illing,* 66 Wis. 79; *Becker v. Holm,* 89 Wis. 86; *Janesville Cotton Mills v. Ford,* 82 Wis. 416.

This question being settled in favor of the defendants, there is no other question in the case of sufficient importance to justify attention.

*By the Court.*—Judgment affirmed.