THE EXCELSIOR WRAPPER COMPANY, Respondent, vs. MES-
SINGER, Appellant.

*January 14—February 3, 1903.*

*Contracts: Construction: Ambiguity: Parol evidence: Mutuality.*

1. A contract provided that one party would furnish the other
   "what . . . paper (same as has been furnished during the
   last twelve months)", at agreed prices, "to be taken as or-
   dered." After part performance the seller refused further de-
   livery, claiming that the contract only called for an amount
   equal to that delivered the previous year. The buyer insisted
   that the true construction of that part of the contract was,
   that the seller should furnish it with all the paper it might
   need in its business during the contract year. The buyer,
   after notice to the seller, followed by persistent refusal to fur-
   nish more paper at the agreed price, bought what paper it
   needed for the unexpired time in the open market, at a higher
   price, and brought action for its damages. On the trial it ap-
   peared, among other things, that the character of the buyer's
   business had been known to the seller for a number of years;
   that it had been customary for the two parties to contract in
   advance for the buyer's entire yearly consumption of certain
   kinds of paper; that the buyer, after the seller had com-
   menced performance of the contract, persistently insisted on
   its interpretation of the contract, and right to any damages
   arising from any necessary extra cost in being compelled to
   buy elsewhere, and that to such position the seller offered no
   suggestion of denial or dissent until there had been ordered,
   and shipped, some 38,000 pounds more than the entire con-
   sumption of the previous year. *Held,* that the language of the
   contract was ambiguous, and that the evidence offered was
   competent and sufficient to sustain a finding that the parties,
   by the ambiguous expression quoted, agreed that the seller
   should furnish, at the prices specified, such paper as the buyer
   should need in its business during the contract year.
2. In such case, the expression in the contract, "to be taken as or-
   dered," followed by the signature of the buyer, is an under-
   taking on the part of the buyer to take, at the price named,
   the quantity specified.
3. A contract was made by one having an established business, the
   character and magnitude of which was known to the other con-

tracting party, whereby the latter was to furnish the former
with such an amount of goods as he might need in the ensuing
year. *Held,* that such contract is not void for want of mutual-
ity, since the quantity, though uncertain at the time of mak-
ing the contract, is sure to become reasonably certain in the
course of the year, and the buyer is bound to take, as the seller
to furnish, such goods, of the quality designated, as should be
needed in that business.

APPEAL from a judgment of the circuit court for Sheboy-
gan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action for damages for breach of alleged contract by the
defendant to sell to the plaintiff, upon the plaintiff's agree-
ment to purchase the same, all the roll-rag paper needed to
be used in the plaintiff's manufacturing business from the
1st day of September, 1899, to the first day of September,
1900, at the price of $1.47½ per 100 pounds, delivered at She-
boygan. The complaint alleged failure to deliver, after
February 1, 1900, 199,510 pounds needed in its business,
and demanded by the plaintiff, whereby it was obliged to
purchase said paper elsewhere, at a price exceeding the con-
tract price by $384.02, for which damages are prayed. The
general facts disclosed by the evidence were that the plaintiff,
for several years prior, had a contract with the defendant
to furnish it all of its paper for each year at an agreed price;
that in August, 1899, shortly before the expiration of such
contract year, it was solicited by defendant's agent to renew
contract for an ensuing year, and did so; all correspondence
on this subject being in evidence, and showing clearly the
purpose on both sides to make such contract. Thereupon the
defendant prepared, of date August 28th, a writing to the
following effect:

"An agreement between *W. D. Messinger & Co.,* of Chi-
cago, Ill., party of the first part, and the *Excelsior Wrapping
Co.,* of Sheboygan, Wis., party of the second part. . . .
Party of the first part to furnish party of the second part
what roll-rag paper (same as has been furnished during the

last 12 months) at $1.42½ per hundred lbs., f. o. b. Sheboygan, from Sept. 1st, 1899, to Sept. 1st, 1900, to be taken as ordered.

> "EXCELSIOR WRAPPER Co.,
>> "By W. E. TALLMADGE, Manager.
> "W. D. MESSINGER & Co.,
>> "Per G. H. RICHMOND, Agt."

Shipments as called for continued, with some delays not material to this action, until about February, when defendant repudiated responsibility to supply any more paper; claiming that the true construction of this agreement was to furnish only so much paper as had been furnished during the preceding year, which limit had then been exceeded. The court (jury having been waived) found that the written contract above mentioned is indefinite and uncertain; that before the execution thereof both parties intended to make a valid contract for a year's supply of paper; that after its execution both parties treated it as a valid contract for a year's supply of paper; that defendant complied with it up to about the middle of January, 1900, and then refused to sell and deliver any more; that, previous to the time of such refusal, defendant had received an order for paper to supply plaintiff's factory for the remainder of the term; that, after notice that it would do so, plaintiff purchased paper in the open market, for no more than its needs, at a necessary increase in price of $384.02. As conclusion of law, the court found that the contract entered into between the parties was a valid and legal contract for the purchase and sale of all the paper needed in plaintiff's manufacturing business from September 1, 1899, to September 1, 1900, and accordingly rendered judgment in favor of the plaintiff and against the defendant for $384.02, from which defendant appeals.

For the appellant the cause was submitted on the brief of *Francis Williams.*

*A. C. Prescott,* for the respondent.

DODGE, J.   There is but one controverted question of fact in this case, and that is, What meaning had the parties in using the expression contained in the contract of August 28, 1899, "what roll-rag paper (same as has been furnished during the last 12 months)"?   That the expression is ambiguous and requires explanation is, of course, obvious at a glance; hence extrinsic evidence was admissible to aid the court in its interpretation; such evidence being, however, confined within certain restrictions.   Obviously, by the reference to the preceding year, it became admissible to show what had been done between the parties that year; and it appeared without dispute that there had been a contract between them for the furnishing of paper of this description, of specified weight and quality, to the amount necessary in plaintiff's business, at the price of $1.42½ per 100 pounds, to be shipped by the defendant and received by the plaintiff as the latter might from time to time order during that year.   Three constructions are suggested: First (that of the plaintiff), that all of these terms and specifications of the previous year's contract were by these words embodied in the contract sued on.   Defendant's counsel suggests that the words "same as has been furnished" refer only to the weight and quality, while defendant himself, in correspondence, finally contended that they signified the same number of pounds as furnished the preceding year.   The court below, as a deduction from all of the evidence, has adopted the plaintiff's construction.   The evidence, besides proof of what the previous contract had been, consisted of three or four letters from defendant and his agent to plaintiff, and from plaintiff to him, showing that the parties met upon a purpose of providing by contract for plaintiff's needs of that class of paper for the ensuing year, in contemplation of the probability that prices would be higher, and of the fact that defendant needed to have a binding contract with plaintiff before he could safely give his order to the paper mills; that both parties, with such

contemplation, assented to a renewal for another year of the contract then existing between them. Such assent doubtless might have constituted a contract, of which the letters constituted complete evidence, had the parties not proceeded thereafter to reduce to more formal shape and to sign the writing of August 28 as evidence of the contract between them; including therein a further element with reference to another kind of paper, as to which no definite agreement had been reached until this instrument was executed. It further appeared that the character of plaintiff's business had been known to the defendant for a number of years, and it had been customary for defendant and plaintiff to contract in advance for the plaintiff's entire consumption of certain kinds of paper. As to this class of extrinsic or parol evidence of acts, conduct, or communications, preceding the execution of a formal contract, many decisions appear in our own Reports, and the lines of demarcation are reasonably certain. While it is not permissible to offer extrinsic evidence of the terms of the agreement,—of what one party or the other promised,—to vary, defeat, or add any term in a written contract, it is permissible, in case of ambiguity, to introduce evidence to ascertain the subject-matter with reference to which parties proceeded to negotiate and contract, and their situation and surrounding circumstances, so that the court may stand in substantially the same light in reading the words of the contract as did the parties when adopting those words. *Nash v. Towne,* 5 Wall. 689; *Minnesota L. Co. v. Whitebreast C. Co.* 160 Ill. 85, 43 N. E. 774; *Sigerson v. Cushing,* 14 Wis. 527; *Nilson v. Morse,* 52 Wis. 240, 9 N. W. 1; *Walsh v. Myers,* 92 Wis. 397, 66 N. W. 250; *Brittingham & H. L. Co. v. Manson,* 108 Wis. 221, 84 N. W. 183; *Rib River L. Co. v. Ogilvie,* 113 Wis. 482, 89 N. W. 483. These authorities refute the contention that in no case can be admissible any communications between the parties at or prior to the execution of the written contract. So far as

such communications, verbal or written, serve merely to· establish the situation or surroundings, they differ not at all from other evidence of the same facts. So far, however, as· they relate to the terms of agreement between the parties,. they cannot be received. The writing must be taken as their· final expression. 1 Greenl. Ev. §§ 286, 288; *Steele v. Schricker,* 55 Wis. 134, 143, 12 N. W. 396; *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661.

Another class of evidence which was offered in much volume was the subsequent dealings and correspondence of the parties under this contact, whence it appeared that persistently, from some time in October onward, the plaintiff categorically and unequivocally declared its understanding that the contract entitled it to all the paper which its business demanded, and that, if that were not furnished, it had the right to charge defendant for any necessary extra cost in buying elsewhere. To the declaration of this claim, defendant offered no suggestion of denial or dissent until after there had been ordered and shipped some 38,000 pounds more than the entire consumption of the previous year, nor until some time in February, when, upon the claim that he had already shipped more than the entire shipments of the previous year, and therefore more than the contract amount, he refused to fill orders except at a higher price. The efficacy of declarations and conduct of parties to give practical construction to ambiguous expressions in their contracts has been often recognized, and, in a doubtful case, may well turn the scale in one direction or the other. *Hosmer v. McDonald,* 80 Wis. 54, 61, 49 N. W. 112; *Janesville Cotton Mills v. Ford,* 82 Wis. 416, 430, 52 N. W. 764; *Walsh v. Myers,* 92 Wis. 401, 66 N. W. 250. We think this evidence entirely sufficient to sustain the conclusion of the circuit court that the parties intended, by the ambiguous expression above quoted, to declare their agreement that the defendant should furnish, at the price specified, such roll-rag paper as the

plaintiff should need in its business from September 1, 1899, to September 1, 1900.

2. But appellant further contends that even, if this construction be given to the words of the contract, it still is not binding upon the defendant, for want of mutuality—First, because, as he asserts, it contains no undertaking whatever on the plaintiff's part; and, secondly, because, if bound, the contract only requires the plaintiff to take such paper as it chooses, and it might, within its terms, refuse to take any. The first of these grounds of asserted want of mutuality, we think, is wholly contradicted by the very words of the writing, which closes with the expression, "to be taken as ordered," followed by the signature of the plaintiff. This we have no hesitation in construing to be an undertaking on the part of the plaintiff to take, at the price named, the quantity specified. We therefore do not find it necessary to discuss whether an obligation so to do would be implied from the mere signature of a document declaring nothing but the duty of the other party, in analogy to the implication which has been held to arise from a mere "acceptance" of such an undertaking. *Shadbolt & B. I. Co. v. Topliff,* 85 Wis. 513, 55 N. W. 854; *McCall Co. v. Icks,* 107 Wis. 233, 236, 83 N. W. 300. The latter contention presents a question fruitful of many decisions by courts; the earlier of them tending generally to the view that, where the agreement of one party was to furnish only that which the other party should desire or order or need, there was entire freedom from obligation on the part of the latter, and therefore no mutuality. The principle of these cases has been very lately declared in this court, in *Hoffman v. Maffioli,* 104 Wis. 630, 80 N. W. 1032; *Teipel v. Meyer,* 106 Wis. 41, 81 N. W. 982. In later times courts have fully recognized, however, that when the discretion, wants, or needs of a party are referred to an existing situation, such as an established business or a known enterprise, and intended to be controlled thereby, there becomes

added a measure of certainty sufficient to give to the contract mutuality. Thus, an agreement to carry all coal which the other party might desire to have carried in a given period, while wholly uncertain if the other party has no coal and is engaged in no business or enterprise to regulate his desire to ship, is reasonably certain in the case of a mine owner, the product of whose mines will regulate the quantity which he will need, and therefore be likely to desire, to ship, if the construction be adopted that his option is to be controlled by the course of such business. The underlying principle of this distinction was expressed in *McCall Co. v. Icks,* 107 Wis. 233, 83 N. W. 300, where the defendant agreed to buy a specified number of all dress patterns which the plaintiff should issue. It being made to appear that the plaintiff was in the business of manufacturing and issuing patterns of various descriptions as the market needs required, it was held that the conduct of the plaintiff's business, although prospective, would give a sufficient measure of certainty as to the number agreed to be purchased to make the contract valid and binding upon both parties. Other illustrative cases are *Wells v. Alexandre,* 130 N. Y. 642, 29 N. E. 142; *Minnesota Lumber Co. v. Whitebreast Coal Co.* 160 Ill. 85, 43 N. E. 774; *Parker v. Pettit,* 43 N. J. Law, 512; *Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co.* 114 Fed. 77; *Hickey v. O'Brien,* 123 Mich. 611, 82 N. W. 241; *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661; *McCall Co. v. Icks, supra.* The situation presented in the instant case falls clearly within the principle of the later decisions. The plaintiff had an established business, of character and magnitude well known to the defendant. It could not, with profit to itself, seriously modify the volume of that business for the mere purpose of increasing or diminishing the amount of any given class of supplies. The exact quantity of paper, therefore, which it would want or need in that business during a prospective year, while uncertain at the time of the

making of the contract, was sure to become reasonably certain in the course of the year; and the contract was not merely an optional one with the plaintiff, but bound it as well to take, as it did the defendant to furnish, such paper, of the quality designated, as should be needed for that business. This, under the authorities above cited, constitutes sufficient mutuality to give full validity to the contract, and make either party liable to the other for its breach.

The foregoing disposes of all the grounds of error assigned by appellant. The competent evidence, even if some of doubtful competency was admitted, fully supported the construction given by the trial court to the ambiguous words used in the written contract, which upon that construction became certain and mutual. The breach of the contract as so construed, and the damage thereby caused to plaintiff, are not controverted. The judgment was right.

*By the Court.*—Judgment affirmed.