WENGER, Respondent, vs. MARTY, Appellant.

*April 2—April 17, 1908.*

*Contract: Ambiguity: Extrinsic evidence: Prejudicial error: Waiver of warranty: Acceptance of defective product.*

1. Where a contract provided that plaintiff should perform the work therein stipulated for "to the best of his ability," *held* that, the expression being ambiguous, it was error to exclude extrinsic evidence, consisting of plaintiff's own declarations regarding his skill, offered to identify the standard of measurement referred to, and as the charge to the jury carried the same ambiguity the error was prejudicial.

2. Defendant employed plaintiff as cheese-maker, agreeing to provide a factory and to supply all equipment and material needed for the work. Plaintiff was to make, tend, and cure the cheese and take care of it until removed by defendant, and to indemnify defendant against any loss due to bad cheese caused by plaintiff's negligence. Plaintiff's compensation consisted of a stipulated sum per hundred weight, the use of the factory as a residence, and cheese and milk for family consumption. The product when made remained in the factory for several weeks with no opportunity for defendant to inspect the same or to know the character either of the services or of the product, and by the time defendant had such an opportunity plaintiff had drawn advance payments on his compensation which, if applied to the services earliest rendered, would fully pay for the work performed on that particular cheese which upon inspection was found defective. *Held*, that the payments to

plaintiff and the acceptance and sale of the cheese by defend-
ant did not constitute a waiver of his right to damages due to
plaintiff's negligence, as the cheese when made belonged to the
defendant and was at all times in his legal possession, and his
acceptance and sale thereof could not be treated as an ordinary
acceptance between buyer and seller.

3. Where there was no conflict of evidence or no evidence at all
   respecting certain issues, it was misleading and erroneous for
   the trial judge to charge the jury that the evidence was con-
   flicting.

4. Where a contract of employment of plaintiff as cheese-maker
   contained a warranty by plaintiff against loss due to his negli-
   gence, written into a printed blank, such written addition was
   especially significant of the intention of the parties, and indi-
   cated a purpose to absolve the defendant from much of his duty
   to object to or reject the services from time to time as they
   were rendered, and an inference of intent to waive did not re-
   sult from the same circumstances of silence or continuance of
   service as might be effective in the absence of such a warranty.

APPEAL from a judgment of the circuit court for Green
county: GEORGE GRIMM, Circuit Judge. *Reversed.*

The defendant, being a manufacturer and dealer in cheese
at Brodhead, Wisconsin, and having several tributary local
cheese factories, entered into a written agreement with the
plaintiff whereby from April 1, 1905, to April 1, 1906, he
engaged the plaintiff "as cheese-maker." The contract pro-
vided for supply of tools and machinery by defendant and
return thereof by plaintiff unimpaired; also that defendant
should provide the necessary supplies and materials; that
plaintiff should receive milk from the farmers and supply
any additional help he might need; that he should keep
tools clean and in good condition, and keep factory and cel-
lar clean; that he should have use of the factory as a resi-
dence and cheese and milk for the use of his family. The
plaintiff further

"agrees to make Limburger cheese, or cheese whenever so
desired by the party of the first part. The cheese-maker also
agrees and binds himself especially to do the cheese-making

in a clean, good, and workmanlike manner to the best of his ability, to tend and cure the cheese properly until fully cured or until requested by the party of the first part to pack and ship the goods. He also agrees to take care of the cheese until all of the season's product has been ordered away by the party of the first part, and in general binds himself to do everything required for the operation of a cheese factory, even if not especially mentioned in this contract."

The defendant agreed to compensate the plaintiff by paying him seventy-five cents per 100 pounds of Limburger cheese manufactured by him. Appended to the contract, which was upon a printed blank, was the paragraph:

"Party of the second part [plaintiff] also agrees to stand good for any loss or damage on bad cheese if caused through his negligence."

Plaintiff remained throughout the year and manufactured Limburger cheese, of which 42,302 pounds was taken by defendant into his warehouse at Brodhead and sold by him. Payments were made to plaintiff from time to time as his living expenses required, amounting to about $245, so that there would have been due him at the contract rate of compensation about $46. The payments never had reference to any specific deliveries of cheese nor to the total amount earned at the time they were made, being mere general advances. Plaintiff brought this suit to recover the balance of compensation. Defendant interposed counterclaim alleging that plaintiff, through lack of skill and negligence, spoiled a large amount of cheese by reason of doing his work in a negligent, unskilful, and unworkmanlike manner, to the damage of the defendant in the sum of $949.71, and also that through his lack of skill and negligence he caused injury to one of the appliances of the factory to the amount of $50, for both of which recovery was prayed. The jury found a general verdict in favor of the plaintiff for the undisputed amount of the balance of compensation at the con-

tract rate, disallowing the counterclaims entirely. From judgment entered on this verdict the defendant appeals.

For the appellant there was a brief by *William H. Mc-Grath* and *William Smith,* and oral argument by *Mr. Smith.*

*J. L. Sherron,* for the respondent.

DODGE, J.   The first error assigned is the exclusion of evidence of plaintiff's statements made to the defendant before the contract was entered into as to the measure of his skill and ability as a cheese-maker.  The contract industriously added as a measure of the plaintiff's duty his own ability.  Without such element it would have been his contract duty to exercise the skill, diligence, and care of an ordinarily competent and careful cheese-maker; but that duty was either limited, confirmed, or increased by his agreement that the work should be done "to the best of his ability."   If both parties had known at the time of the making of the contract that plaintiff was a novice in the trade, this phrase might well mean that the devotion of such skill and ability as he possessed should satisfy the contract, although not equal to that ordinarily exercised. If, on the other hand, both parties met upon the understanding that plaintiff was an extraordinarily skilful man, it could have no such relaxing effect, and might even require a higher degree of diligence and skill. Hence the term was ambiguous.  No court can know without evidence what is the measure of an individual's skill any more than it can know the length of his foot or arm.  Hence extrinsic evidence was admissible to identify the standard of measurement thus referred to by the contract; in other words, to identify the thing to which the contract applied. *Chicago, St. P., M. & O. R. Co. v. C., M. & St. P. R. Co.* 113 Wis. 161, 170, 87 N. W. 1085, 89 N. W. 180; *Rib River L. Co. v. Ogilvie,* 113 Wis. 482, 89 N. W. 483; *Merrill v. Best,* 116 Wis. 121, 92 N. W. 555; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 93 N. W. 459; *Perkins v. Owen,* 123 Wis.

238, 245, 101 N. W. 415; *Edwards v. Wis. Inv. Co.* 124 Wis. 315, 319, 102 N. W. 575. Therefore error was committed in excluding the evidence of the ability which the plaintiff had, which evidence consisted of his own declarations; as also evidence of the understanding and knowledge of the parties as to the extent of that ability at and before the making of the contract. We cannot think this error harmless, for the charge carried to the jury the same ambiguity apparent on the face of the contract. They were told that plaintiff's duty was performed if he did the cheese-making in a good and workmanlike manner to the best of his ability, and they were further instructed as to the effect of his negligence in making him liable for loss and damage on bad cheese in such immediate connection with this phrase "best of his ability" that they must have understood that he would be free from negligence if he in good faith exerted such ability as he had. Hence they may have concluded that, though the work was done without customary skill and care, he nevertheless was not in default under the contract.

The second assignment of error was upon certain refusals to give instructions, and to the charge itself in contrast therewith, on the subject of waiver of plaintiff's negligence by the defendant. The court charged:

"Acceptance of the cheese from time to time with full knowledge of its condition, crediting plaintiff therefor upon the books and paying him the agreed price for making it without protest or notice to the plaintiff that the cheese did not meet the contract requirements and that he would be held responsible for the damage, would be a waiver on his part of damages. . . . The testimony is in conflict upon this subject, and you are to determine what the facts are in accordance."

This instruction is first criticised because it applied to the relations between the parties all the tests of waiver properly applicable between buyer and seller upon the delivery of articles under an executory contract of sale. *Ketchum v.*

*Wells,* 19 Wis. 25; *Locke v. Williamson,* 40 Wis. 377, 381; *Olson v. Mayer,* 56 Wis. 551, 14 N. W. 640; *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785. The situation here was very different. Plaintiff was a mere servant working in the defendant's premises with defendant's material and appliances to transform those materials from milk to cheese. After the transformation was complete the product remained in the factory for considerable periods, from three to eight weeks, with no opportunity for the defendant to inspect or to know the character either of the service rendered or of the product thereof, and when the opportunity finally came to observe the quality of that product there was no new acceptance of it by the defendant, for it had been his property and in his legal possession at all times; and there was no opportunity for him to reject, perhaps no right to reject because of defects in the product, for plaintiff's agreement was not to make good cheese, but to exercise due skill and diligence. Defendant could do nothing but dispose of it for the best price obtainable, for it was irrevocably his. Neither could there then be any opportunity for plaintiff to correct any failures of duty on his part several weeks after the manufacture of the cheese was complete. Hence his position was not changed in reliance on defendant's silence. Further, the plaintiff had already, by the time there was any opportunity to inspect the cheese, drawn advance payments upon his compensation which, if applied upon the service earliest rendered, would have fully paid for the work performed upon that particular cheese which on inspection was found defective. At that time the contract was fully executed as to the particular cheese. The question, therefore, of intent to waive breaches of the plaintiff's agreement for diligent and skilful labor was in no wise controlled by the rules stated by the court, but by very different considerations, which we shall not undertake now to specify, but which are applied in decisions as to the relations between employers and em-

ployees, of which the following are some illustrations: *Keller v. Oberreich,* 67 Wis. 282, 30 N. W. 524; *Dickinson v. Norwegian P. Co.* 101 Wis. 157, 76 N. W. 1108; *Raipe v. Gorrell,* 105 Wis. 636, 81 N. W. 1009; *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 337, 339, 89 N. W. 542. The charge, therefore, for this reason was misleading and erroneous.

It was further misleading and erroneous for that it told the jury that the evidence was conflicting upon several subjects where there was absolutely no conflict or where there was entire absence of evidence. Thus there can hardly be said to have been any evidence of the acceptance of the cheese with full knowledge of its condition, for when the manufacture of a block of cheese was complete it was piled on shelves in the cellar of the defendant's cheese factory where plaintiff worked, and was as completely in the legal possession of the defendant as it ever could be, and yet at this time there is not the slightest evidence that defendant had any knowledge or opportunity for knowledge of the defects in its condition. Further, there is no single word of evidence that the plaintiff was ever credited on defendant's books therefor. The evidence goes no further than to indicate that a record was kept of the amount of cheese made at the factory where plaintiff worked. Indeed the first actual book entry of which any proof appears in the record is the charge against the consignee when a shipment of cheese was made upon commission or on a sale. Again, the payment of the agreed price for making the cheese was wholly without proof. The evidence is undisputed that plaintiff from time to time drew money necessary for his living expenses, the amount of such advances being wholly without relation either to any particular quantity or consignment of cheese manufactured by him or to the total amount which he had at any time manufactured. Indeed it would appear, at least inferentially, that

moneys were drawn by him sufficient to cover the services long before the product of such services had come under defendant's inspection. Mere advances of money of this sort are hardly ever significant of any purpose to accept or waive defects in the service or property.

For the reason stated the judgment must be reversed. But there is another element in this contract which seems not to have attracted as much attention from the court as it should. The final clause of the contract was industriously written into a printed blank, and, under a familiar rule, such written addition is deemed specially significant of the intention of the parties. That clause, quoted in the statement of facts, is a warranty against injury resulting from plaintiff's negligence. Its obvious purpose was to enable the parties to proceed under the relations contemplated by the contract until the defendant, in the course of such transactions, had reached the point of suffering such loss, which could not occur and be definitely ascertained until he had actually disposed of the cheese manufactured by the plaintiff. A right to recover damages under such a warranty may undoubtedly be waived, as indeed may any contract right; but its purpose, and therefore its effect, is to absolve the defendant from much of his duty to object to or reject the services from time to time as they are rendered. An inference of intent to waive will not result from the same circumstances of mere silence and continuance of service as might be effective in the absence of such warranty. *Starke v. Crilley,* 59 Wis. 203, 18 N. W. 6; *Schweickhart v. Stuewe,* 71 Wis. 1, 5, 36 N. W. 605.

Other assignments of error are so involved in the views already expressed that their discussion in detail is unnecessary, since reversal must result upon the grounds already stated.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.