M. A. BROWN PAPER BOX CO., Appellant, v. KING-BRINSMADE MERCANTILE COMPANY, Respondent.

St. Louis Court of Appeals, May 4, 1915.

SALES: Quantity not Specified: Validity of Contract. A contract reciting that one of the parties agreed to buy, and the other agreed to sell, hat boxes of a certain description at stipulated prices, but which did not specify the number of boxes that were to be sold, was not a contract of sale, but was merely an agreement fixing the prices in the event the vendee should see fit to order, since it did not impose an obligation on the vendor to sell, nor on the vendee to buy, any certain quantity.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

AFFIRMED. ` `

*Taylor & Chasnoff* for appellant.

(1) A contract between a manufacturer of paper boxes and a wholesaler of millinery who uses such boxes for packing his wares, whereby the wholesaler agrees to buy and the manufacturer agrees to sell paper boxes of certain descriptions during a stated period at specified prices, should not be construed as an agreement covering only so many of such boxes as the wholesaler might from time to time desire to order. (a) If such an agreement is construed to mean that the manufacturer has an option to purchase only so many of such boxes as he may desire to purchase, the agreement is not binding on either party, because such an agreement lacks mutuality and is without consideration, and is void. Loudenback Fertilizer Co. v. Tenn. Phosphate Co., 121 Fed. 298, 61 L. R. A. 405; Campbell v. American Handle Co., 117 Mo. App. 19; Ames-Brooks Co. v.

Aetna Insurance Co., 83 Minn. 346; Santaella & Co. v. Lang, 155 Fed. 719; Davie v. Lumbermen's Mining Co., 93 Mich. 491, 24 L. R. A. 357; Rafolovitz v. American Tobacco Co., 73 Hun (N. Y.), 87; Bailey v. Austrian, 19 Minn. 535. (b) A contract should be construed in such a way as to make the obligations imposed by its terms mutually binding, unless such construction is wholly negatived by the language used. Minnesota Lumber Co. v. Coal Co., 160 Ill. 85, 31 L. R. A. 529; Hardwick v. American Can Co., 113 Tenn. 657; Semon-Bache & Co. v. Coppes, Etc., Co., 35 Ind. App. 351; Lima Locomotive & Machine Co. v. National Steel Castings Co., 155 Fed. 77, 11 L. R. A. (N. S.) 713; First National Bank of Louisville v. Doherty, 156 Ky. 386. (c) The trial court's construction reads into defendant's written agreement to buy, the words "in such amounts as it may desire" which qualification does not appear in the instrument and which makes it void for lack of mutuality. (d) Contracts should be construed in the light of circumstances surrounding the parties and of the objects which they intentionally had in view. Stanton v. Rochester German Underwriter's Agency, 206 Fed. 978; Warden Coal Washing Co. v. Meyer, 98 Ill. App. 640. (e) The construction given the contract by the trial court gives no effect to defendant's agreement "to buy," which is expressed in the instrument. Stanton v. Rochester German Underwriter's Agency, 206 Fed. 978. (2) Such an agreement, especially when made under the circumstances in evidence in this case, means that during the specified period the manufacturer agrees to furnish and sell to the wholesaler, and the wholesaler agrees to buy from the manufacturer all of such boxes which the wholesaler may need in his business for packing purposes for that season. Wells v. Alexandre, 130 N. Y. 642, 15 L. R. A. 218; Levey v. N. Y. Central R. Co., 4 Misc. (N. Y.) 415; Church v. Proctor, 66 Fed. 240; Excelsior Wrapper Co. v. Mes-

singer, 116 Wis. 549. So construed, the agreement is valid and binding on both parties thereto. Manhattan Oil Co. v. Richardson Lubricating Co., 113 Fed. 923; Laudenback Fertilizer Co. v. Tenn. Phosphate Co., 121 Fed. 298, 61 L. R. A. 405; Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715; Rozier v. St. Louis & San Francisco R. R., 147 Mo. App. 290; Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 31 L. R. A. 529; Parker v. Pettit, 43 N. J. L. 512; National Furnace Co. v. Keystone Mfg. Co., 110 Ill. 427; Hickey v. O'Brien, 123 Mich. 611, 49 L. R. A. 594; Church v. Proctor, 66 Fed. 240; Ames-Brooks Co. v. Aetna Insurance Co., 83 Minn. 346; Lima Locomotive & Machine Co. v. National Steel Castings Co., 155 Fed. 77, 11 L. R. A. (N. S.) 713; Golden Cycle Mining Co. v. Rapson Coal Mining Co., 188 Fed. 179.

*Lee W. Grant* and *Barton M. Grant* for respondent.

(1) It must be presumed that the parties put into the paper all of the terms of their agreement. Gooch v. Conner, 8 Mo. 391; State ex rel. v. Hoshaw, 98 Mo. 358. (2) The contract may be valid as it reads. If any boxes had been ordered from appellant by respondent, the prices and other terms would have been binding. Appellant cannot import into it something that is not therein written. If it is to be construed in any other light, then it is void for uncertainty. Cold Blast Trans. Co. v. K. C. Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696 (cited with approval in Moran B. & N. Co. v. St. Louis Car Co., 210 Mo. 715; Price v. Atkinson, 117 Mo. App. 52, 57); Hoffman v. Maffioli, 104 Wis. 630, 47 L. R. A. 427; Crane v. Crane, 45 C. C. A. 96; Campbell v. Handle Co., 117 Mo. App. 19.

ALLEN, J.—This is an action for the alleged breach of a written contract whereby defendant, as

plaintiff avers, agreed to purchase from plaintiff all of the paper boxes, of certain sizes and descriptions, which defendant might require in its wholesale millinery business during the period beginning June 3, 1911, and ending January 1, 1912. Plaintiff alleges that it was ready and willing to perform the contract on its part, but that defendant repudiated it and refused to comply with the terms thereof, whereby plaintiff was damaged in the sum of $2000. The answer is a general denial.

The case has had two trials in the circuit court. Upon the first trial thereof plaintiff suffered a nonsuit, which upon its motion was afterwards set aside and a new trial granted. Upon the second trial the court, at the close of plaintiff's case, ruled that under the law and the evidence plaintiff could not recover. Plaintiff thereupon took a nonsuit; and after unsuccessfully moving to have the same set aside, brought the case here by appeal.

Plaintiff is a corporation engaged in the manufacture of paper boxes. On June 3, 1911, plaintiff's president, in response to a telephone message, went to defendant's place of business and met one Mars, a clerk in defendant's employ. A conversation ensued concerning the prices of paper boxes used by defendant in its business, and thereupon the following instrument was executed:

"St. Louis, Mo., June 3, 1911.

"King-Brinsmade Mercantile Co., agree to buy, and the M. A. Brown Paper Box Company to sell the following described paper boxes for a period ending January 1, 1912; Terms sixty days, one per cent.

Regular packing box, $22\frac{1}{2}$x$14\frac{3}{4}$x$11\frac{1}{2}$, No. 50 Plain Straw Board as per sample, 72 cents per dozen.

"$18\frac{1}{2}$x$18\frac{1}{2}$x18, No. 3 Box as sample, $1.16 per dozen.

"17x17x17, No. 2 Box as sample, 96c per dozen.

"Time required for delivery one day.

"Covered in white plate as per sample submitted; time required for delivery four days.

"12x12x8, No. 60 lined, 45 cents per dozen.

. . . . . . .

"With tape and label.
                        "M. A. Brown Paper Box Co.,
                            By (Signed) Jno. E. Brown.
                        King-Brinsmade Mercantile Co.,
                                (Signed) R. E. Mars."

Mr. Brown, plaintiff's president, testified that shortly after the execution of the above instrument he was informed by defendant's president that unless certain changes were made in the prices stated therein defendant would not purchase any boxes from the plaintiff; that plaintiff refused to reduce the prices, whereupon defendant undertook to cancel the contract, though plaintiff had gone to certain expense in preparing to execute the same. He further testified that it was customary in the millinery business to have quotations submitted by different box manufacturers and to give the successful bidder a contract to supply all boxes that might be needed during an entire "season."

Defendant's president, Mr. Brinsmade, was called as a witness by plaintiff. His testimony is to the effect that it was defendant's custom to call upon box manufacturers at the beginning of a season to furnish written quotations on boxes, and that the manufacturer quoting the best prices would be given orders from time to time as boxes were required in defendant's business, and if such manufacturer did not furnish boxes promptly orders were placed elsewhere; and that upon the occasion in question plaintiff's president was summoned to give quotations to be thus utilized. And it appears that defendant had previously purchased boxes from plaintiff without making a contract for the season's supply. Further testimony of this witness tends to show that Mars had no authority to enter into a contract binding

defendant corporation to purchase boxes exclusively from plaintiff during the period above mentioned.

The written contract does not in terms require defendant to buy or plaintiff to sell any number of boxes whatsoever. There can be no doubt, we think, that the instrument does not give rise to any binding obligation on the part of plaintiff to furnish, or on the part of defendant to receive and pay for any boxes. It is evident that the instrument imports nothing more than an agreement fixing the prices of boxes, of the various descriptions mentioned; to be binding upon the parties in case defendant should see fit to order from plaintiff any such boxes. We have briefly referred to the testimony relative to the circumstances under which the instrument was executed because of the contention made that the writing, when read in the light of the surrounding circumstances, should be construed as binding the defendant to purchase from plaintiff all of the boxes, of the character mentioned therein, that might be required in defendant's business during the period in question. But we think that there is no room for such construction. The writing does not so provide, and the evidence adduced as to the surrounding circumstances, if here admissible for that purpose, is not such as to justify the inference that the parties intended to so contract. The testimony of plaintiff's president is not such as to show the existence of any such custom as would warrant the reading into the contract of words not there found; and other evidence touching the matter tends to negative the idea that the mutual intention of the parties was to contract for the furnishing of boxes for an entire season.

And so viewing the written instrument, plaintiff's case must necessarily fail. In Cold Blast Transp. Co. v. Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696, a leading case, it is said by SANBORN, J.: "A promise to furnish, deliver or receive, specified articles at certain prices, without any agreement to order or to

accept any amounts or quantities of the articles, is without binding force or effect, because neither party is thereby bound to deliver or to accept any quantity or amount whatever. Such promises are void, because they lack one of the essential elements of an agreement—certainty in the thing to be done. Contracts for the future supply during a limited time of articles which shall be required or needed or consumed by an established business, or used in the operation of certain steamships or other machinery, are no exceptions to this principle, because they fall under the rule, '*Id certum est quod certum reddi potest.*' "

In that case the contract was entered into by a written offer made by one party to furnish certain materials during a named period at designated prices, with the option to renew the contract for a further period, and which was accepted by the other party. It was held that while the contract served to fix the prices on such articles as were actually ordered within its terms, the seller never became bound to deliver nor the purchaser to take and pay for any articles that had not been ordered. The doctrine upon which the case proceeds, which is abundantly supported by authority, has been expressly sanctioned by our courts. [See Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715, 109 S. W. 47; Campbell v. Handle Co., 117 Mo. App. 19, 94 S. W. 815.]

Learned counsel for appellant here seek to distinguish the case before us from that of Cold Blast Transp. Co. v. Bolt & Nut Co., supra, upon the ground that in the latter there was a mere offer to furnish certain articles at certain prices, accepted by the other party, while here the instrument in question uses the words "buy" and "sell." But it does not appear that any sound distinction may thus be made. The language here employed imports no more than is implied by the acceptance of a written offer to furnish materials at certain prices during a specified period. The fact re-

mains that the contract nowhere specifies any definite number of boxes to be sold by plaintiff and purchased by the defendant.

If the contract had in fact provided that defendant would buy from plaintiff all of the boxes of the kind specified .that might be required by an established business conducted by defendant, during a certain period, we would have a different question to deal with. In Cold Blast Transp. Co. v. Bolt & Nut Co., supra, it is said: "The line of demarkation between valid and invalid contracts here runs between the requirements of machinery, or of an established business, and the wants, desires or requirements of the tentative vendee; and that because the former are either reasonably certain or may be made so by evidence, while the latter are conditioned by the will of the tentative vendee alone and are both uncertain and capable of infinite variation." In this connection see also: Crane v. C. Crane & Co., 45 C. C. A. 96; Hoffman v. Maffioli, 104 Wis. 630, 47 L. R. A. 427; Wells v. Alexandre et al., 130 N. Y. 642, 15 L. R. A. 218; Church et al. v. Proctor, 66 Fed. 240; Excelsior Wrapper Co. v. Messinger, 116 Wis. 549. But, for the reasons stated above, the contract here in question cannot be construed as fixing the number of boxes to be furnished by the requirements of defendant's business.

It is said by learned counsel for appellant that the language of the contract imports an intention on the part of the parties thereto to enter into a valid and binding agreement. This may be true; but it does not follow that they intended to make the contract declared upon in plaintiff's petition and here sought to be enforced. While such a contract serves to fix the prices at which one party agrees to buy and the other to sell certain articles, should any be so bought and sold during the period named, it is clear that it does not bind the former to buy or the latter to sell anything whatso-

ever, and can give rise to no cause of action as for a breach by either party in this respect.

Other questions raised need not be discussed. The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.