SCHWADE, Respondent, vs. VAN BREE and another, Appellants.

*January 11—February 6, 1934.*

For the appellants there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Harold J. Sporer.*

For the respondent there was a brief by *Ben Z. Glass* of Milwaukee, attorney, and *Beck, Smith & Heft* of Racine of counsel, and oral argument by *Mr. Glass.*

NELSON, J.  Prior to January 13, 1931, defendant Van Bree, who was the president of defendant Racine Universal Motor Company, and one Frace, who was employed by the company, had designed and developed a golf-bag stand. It was known as the "Dee-Lite Golf Stand." It consisted of a tripod arrangement which when attached to a golf bag made it possible for a player to leave his golf bag standing on the ground in an upright position, thus obviating the necessity of his bending over to pick it up.  It was being manufactured by the company which had the sole right to manufacture and distribute it.  It was apparently considered by its designers and the company a very convenient and worthwhile contrivance.  The company desired to promote its sale by distributors throughout the United States. Negotiations were conducted by defendant Van Bree with the plaintiff which resulted in the following contract being entered into on January 13, 1931:

"Mr. S. L. Schwade,          "Racine, Wis., Jan. 13, 1931.
    "2753 N. Bartlett Ave.,
        "Milwaukee, Wis.
    "Dear Sir: Pursuant to our conversation, we hereby employ you beginning Monday, January 19, 1931, same em-

ployment to continue for a period of one year from that date, as Sales Executor of 'Dee-Lite' automatic golf stand, to sell and distribute same in the best possible manner, at the following terms: $75 per week salary and $50 per week traveling expenses. Same to be paid weekly.

"We further agree to pay you a commission of ten cents per stand on all stands sold above 50,000. This commission to be settled at the end of the employment period, or January 19, 1932.

"You are to use your best efforts and sales ability to further the sales and distribution of the 'Dee-Lite' device, and employ the best possible means you find necessary to do so.

> "Yours very truly,
> "DEE-LITE,
> "HUBERT VAN BREE.
> "Accepted: S. L. SCHWADE."

Witness: A. Frace.

Shortly thereafter the plaintiff started out to obtain distributors. He visited Chicago and a number of the larger cities between Chicago and New York. He was fairly successful in contracting with a number of dealers who agreed to take on the distribution of the device in their respective territories. He returned to Racine about the 15th day of March, 1931. On March 18th thereafter he left for the West with California as his destination. He visited a number of cities on the way to California and after arriving there spent considerable time in Los Angeles, San Francisco, and Oakland. The Western trip was not nearly as successful as the Eastern trip had been. He returned from the Western trip about May 20, 1931. From that time on he spent most of his time in Chicago assisting another representative of the company in attempting to promote its business with respect to other lines manufactured by the company. The plaintiff succeeded in obtaining only about eighteen dealers as distributors for the golf stand. He interested several golf club professionals in the device, who promised

to exhibit the golf·stand to golf players and to attempt to sell it along with other golf accessories. He also succeeded in getting some publicity for the stand from certain publishers of golf magazines. Up to August 12th, however, actual sales of the stand proved to be disappointing and the company was dissatisfied with the results obtained. On August 12th, at the conclusion of a directors' meeting held by the company, the following letter was drafted and handed to the plaintiff:

"Mr. S. L. Schwade,      "Racine, Wis., August 12, 1931.
    "Milwaukee, Wis.

"Dear Sir: At our Directors meeting held this P. M. reports were read on sales and business brought in by you for the past seven months. We find during this time your sales have averaged less than five hundred dollars, and due to the fact that we have paid you in salary and traveling expenses the sum of $3,825 we have decided that you are not using· your best efforts and sales ability to further the sales and distribution of our merchandise.

"We are therefore giving you notice that your services with us will terminate on August 15, 1931.

"Due to your account having been overpaid to the amount of $200.01, we are not making a deposit to your credit of $125; we will deduct this figure from the amount due us, leaving the amount of $75 still due us, as well as the articles listed on your sample account.

"Kindly turn in all samples you are now holding.

"We regret to have to resort to this dismissal, but it makes it necessary.

"Yours very truly,
"RACINE UNIVERSAL MOTOR Co.,
HVB/A                    "H. VAN BREE."

After his discharge the plaintiff sought employment elsewhere. He obtained a position with a Chicago company for whom he worked for a time on a commission basis. He was allowed a drawing account of $50 a week. His commissions for October, November, and a part of December amounted to $210.72. In December he was put on a straight

salary basis of $110 a week. He testified that up to January 19, 1932, his net earnings received from his new employer amounted to $471.72. He claimed that from the time he was discharged up to January 19, 1932, his total loss of wages amounted to $1,650, not including the $50 weekly expense money provided by the contract. He admitted owing the company $168.46. After deducting his net earnings up to January 19th he claimed that his damage amounted to $1,009.08.

The jury found that during the period of his employment prior to the notice of termination of the contract the plaintiff used his best efforts and sales ability to further the sales and distribution of the "Dee-Lite" device and employed the best possible means he found necessary to do so; that the defendants were not reasonably justified in terminating the contract and fixed the plaintiff's damages at the sum of $1,009.08.

The defendants contend that their motion for a new trial should have been granted because the court erred in receiving evidence and in excluding evidence, erred in its charge to the jury, and in refusing to charge the jury as requested.

The defendants first contend that the court erred in receiving, over their objection, numerous letters written by the plaintiff to the company in which he told where he was, what he was doing, what he had accomplished or failed to accomplish, what contracts he had procured, what he recommended that the company do to assist him, what favorable impressions the device made upon those to whom it was exhibited, what he anticipated in the way of future business, etc. The defendants objected to the admission of these letters as evidence tending to prove performance of the contract by the plaintiff. The court however received them for that purpose. Although the plaintiff testified generally as to what he had done, where he had gone, etc., he ap-

parently did not take each letter in hand and use it for the purpose of refreshing his memory, nor did he specifically testify that the contents thereof were true. Most of the letters were originals sent to the company and produced at the trial by defendants upon the demand of the plaintiff. The plaintiff was cross-examined at length but was not asked specifically as to the truthfulness of the contents of the letters. He did, however, testify as to the trips made, the cities visited, the contracts obtained, and that no objection was offered by the company to the manner in which he was proceeding to obtain distributors. He told about calling on people whom he thought would be suitable distributors for the golf stand and about demonstrating it to them and also to individual golfers. After the letters had been received in evidence he testified:

"I wrote to them (the company) usually of the procedure and what I had done, and whether I had accomplished anything. Whatever sales were made, whatever contracts were signed, I mailed it to the office, and stated my next move, whenever possible."

He also testified:

"I am sure my letters indicate what I wrote the office from these various places."

While it does not appear that the plaintiff specifically testified as to the truthfulness of the contents of the several letters, no questions were asked him on cross-examination intimating that what was stated in the letters was untrue. While it might have been better for the plaintiff to testify as to just what he did in each city, using the letters to refresh his recollection if necessary, we do not think that the defendants were prejudiced by the receipt of the letters in evidence. While there are some optimistic statements as to prospective sales which apparently did not materialize, we do not think that the jury was thereby led to believe

that such sales had materialized in view of the fact that the letter of discharge contained the following statement: "We find during this time your sales have averaged less than five hundred dollars," and the minutes of the directors' meeting, introduced in evidence, contained the following:

"Next the report of Mr. Schwade was taken up, and after going over his sales we find them less than five hundred dollars for the entire seven months."

We conclude that the defendants were not prejudiced by the introduction of the letters.

The defendants next contend that the court erred in excluding testimony as to certain representations made by the plaintiff at and prior to the time the contract was entered into. We think the court was right in excluding such testimony. The defendants, by their officers, specifically denied that defendant Van Bree, on January 13, 1931, or at any time employed the plaintiff as sales executor of Dee-Lite automatic golf stands or in any other capacity and denied that any contract of employment, purported to have been made by Van Bree and the plaintiff, was assumed by the company. They do not assert that the contract was obtained by fraudulent representations as to the ability of the plaintiff and we think that proof of such representations was wholly immaterial. Had the defendant sought to elicit from the plaintiff information as to his actual ability a different question would be before us. Since the contract provided that the plaintiff would use his best efforts and sales ability to further the sales and distribution of the "Dee-Lite" device and would employ the best possible means he found necessary to do so, his actual ability was material. *Wenger v. Marty*, 135 Wis. 408, 411, 116 N. W. 7.

The defendants also contend that the court erred in not receiving evidence as to the limited number of golf stands sold by the plaintiff to distributors, or by the latter, during

the seven months of his employment. We think this was not error. The number of golf stands sold by him or the distributors obtained by him up to August 12, 1931, was, in our view, quite immaterial on the question as to whether he used his best efforts and sales ability to further the sales and distribution of the device. There can be no question that he was employed, not to sell golf stands but to obtain distributors therefor.

The defendants further complain that the court refused to permit them to show that another salesman employed by the company had sold, during a period of approximately sixty days, about two-thirds as many stands as the plaintiff had sold. We do not see how this testimony was material to the issue. In our opinion the court was right in sustaining the plaintiff's objection to such testimony.

We have examined the criticisms against the instructions of the court. The criticisms are supercritical and without merit. The instructions on the whole were full and fair to both parties.

The defendants further contend that the damages found by the jury are excessive. It is undisputed that had the plaintiff been permitted to continue in the employ of the company up to January 19, 1932, he would have earned $1,650, not including any possible profit from the $50 per week expense allowance; that at the time his employment was discontinued he owed the company $168.46. The plaintiff testified that he earned, while in the employ of the Chicago company, a net amount of $471.72. He deducted from the total earnings received up to January 19, 1932, $30 a week as the reasonable amount of his expense while employed in Chicago away from home. The defendants proved by the bookkeeper of the Chicago company that that company advanced or paid to the plaintiff prior to January 19, 1932, the sum of $1,081.42. However, it appears from

the plaintiff's testimony that a part of the sum mentioned was advanced to him on a charge account arrangement which was to be offset by commissions earned, and that it was not until about the last of January, 1932, when he returned from an Eastern trip made on behalf of the company, in which he was quite successful in expediting for the Chicago company the work in hand, that a balance was struck and he given a bonus to cancel the difference between the charge account items and the commissions earned prior to his working for a fixed salary. While the jury might have found less damages, we cannot say that the jury was not justified in reaching the conclusion expressed in its verdict.

The defendants contend that the court erred in allowing certain items aggregating the sum of $12.56 to be taxed as disbursements. It appears that at the time of the commencement of the action the plaintiff garnished a certain bank; that thereafter an undertaking was furnished by the defendants to release the garnishment. Sec. 267.20, Stats. The plaintiff excepted to the sufficiency of the sureties who were thereafter examined before a court commissioner pursuant to the provisions of secs. 264.17, 264.18, and 264.19, who found the sureties sufficient, which finding was affirmed upon appeal to the circuit court. The costs of such justification amounted to $12.56 which the plaintiff was required to pay. The plaintiff thereafter sought to recover such costs as a taxable disbursement. The defendants objected to the taxation of that item.

While sec. 267.20 provides: "And the costs shall be taxable as disbursements of the plaintiff in the action if he recovers," sec. 264.19, which is incorporated into sec. 267.20 by reference, further provides:

". . . The judge may, in his discretion, by order, require the costs of the justification before him, including fees to the bail as witnesses, to be forthwith paid by the party requiring justification."

It is our opinion that the intention of the statutes is to make the party, whose exception to the sufficiency of the sureties is without merit, pay the costs of such unsuccessful proceeding. We therefore conclude that the court erred in allowing the item in question to be taxed as a disbursement against the defendants and that the judgment should be corrected accordingly.

*By the Court.*—The judgment should be modified by deducting from the disbursements taxed the sum of $12.56 and, when so modified, is affirmed.